(April 30, 1985)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NEIL BLACKMAN, Respondent.

On September 1, 1981, the complainant, a gas station attendant, was ordered into a car by two persons, and during a drive of a few blocks was robbed by an unapprehended individual. The man he identified as defendant was the driver of the car. On September 4, 1981, defendant, driving a car which fit the complainant's description — an old black Buick Skylark — was apprehended by the employer of complainant. He held the defen-

dant until complainant arrived at the scene and identified defendant as the driver.

Defendant moved, pursuant to CPL 710.20, for a pretrial *Wade* suppression hearing to determine the admissibility of the identification testimony to be given by the complainant at trial (*United States v Wade,* 388 US 218). In opposition to this motion, the People noted that despite counsel's statements, there had been no "police-arranged" identification procedures and that defendant was identified by complainant at a confrontation arranged by a "private individual".

In an order entered on March 24, 1982, the court granted defendant's application to the extent of directing "a Wade-type hearing", concluding that an issue of reliability was raised by the claimed conduct by private citizens that merited a pretrial hearing to determine the appropriateness of admitting the identification into evidence.

On the scheduled hearing date, the People refused to go forward with a *Wade* hearing, stating that since there was "no question of fact which exists as to the identification issue", the People would not call any witnesses at the hearing, and would instead "rely on the facts which were conceded by the defense in their moving papers, that there was no police action that existed." The court then granted the motion suppressing all potential identification testimony by the complainant, both out of court and in court.

Since the street confrontation at which the defendant was identified was arranged by a private citizen and was without police participation, defendant was not entitled to a *Wade* suppression hearing. However, the court's determination to conduct a pretrial hearing to permit it to evaluate the reliability of the identification testimony seems to us a discretionary determination that the court was entitled to make under all the circumstances.

As pointed out by the Court of Appeals: "The rule excluding improper showups and evidence derived therefrom is different in both purpose and effect from the exclusionary rule applicable to confessions and the fruits of searches and seizures. In the latter cases generally reliable evidence of guilt is suppressed because it was obtained illegally. Although this serves to deter future violations, it is collateral and essentially at variance with the truth-finding process (see, e.g., *People v McGrath,* 46 NY2d 12). But the rule excluding improper pretrial identifications bears directly on guilt or innocence. It is designed to reduce the risk that the wrong person will be convicted as a result of suggestive

identification procedures employed by the police." (*People v Adams*, 53 NY2d 241, 250-251.)

We can see that the court has succinctly recognized the difference between suppressions designed to deter police misconduct and those designed to insure a fair trial. Although the court uses the phrase "employed by the police", this language is not essential to its analysis. Regardless of whether official or private action results in an improper or suggestive "showup", there remains the risk that the wrong person will be convicted as a result of such a showup.

Thus, the Supreme Court, in holding that the presentation of a single suspect to a critically ill witness in her hospital bed did not deny him due process, nevertheless said: "A conviction which rests on a mistaken identification is a gross miscarriage of justice. The *Wade* and *Gilbert* rules are aimed at minimizing that possibility by preventing the unfairness at the pretrial confrontation that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial" (*Stovall v Denno*, 388 US 293, 297) and, as it further elaborated in *Manson v Brathwaite* (432 US 98, 114): "We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony in both pre- and post-*Stovall* confrontations".

From our review of the existing case law, we are persuaded that defendant is not entitled to such a suppression hearing on the basis of the Federal or State Constitutions, since such a constitutional violation would require official, as opposed to private, action (*see, Stovall v Denno, supra; People v Logan*, 25 NY2d 184). Under the circumstances present herein, though, it was not an abuse of discretion for the trial court to direct a hearing to determine whether the identification testimony was reliable enough to submit to the jury.

It is unnecessary when we are dealing with possible misidentification which, as noted, bears so strongly on conviction or acquittal of persons accused of crime, to limit the admissibility of evidence on that issue depending upon whether or not it is predicated upon improper police conduct. "Fairness" under the 5th Amendment certainly requires that the proponents of that evidence meet a threshold of at least minimal reliability. "[T]he traditional view and the accepted principle is that the trial judge decides with finality those preliminary questions of fact upon which depends the admissibility of an item of evidence which is objected to under an exclusionary rule of evidence. The same practice extends to the determination of preliminary facts conditioning the application of the rules as to the competency * * * of

witnesses. On all these preliminary questions the judge, on request, will hold a hearing in which each side may produce evidence." (McCormick, Evidence § 53, at 123.)

In reversing the order appealed from and remanding for an evidentiary hearing in accordance with the original direction of the trial court, we do not mean to condone the refusal of the District Attorney to participate in the hearing as originally ordered. The possibility, however, is presented that the District Attorney mistakenly believed that the trial court's order was for a *Wade* hearing, not a *Wade*-type hearing, and had accordingly decided to preserve a clear issue of law as to whether a hearing was constitutionally mandated under the circumstances. Concur — Murphy, P. J., Sandler, Asch and Milonas, JJ.