OPINION OF THE COURT
Robert S. Kreindler, J.
Defendant moves for a pretrial hearing to determine whether the complainant’s potential trial testimony should be *805 suppressed as the product of a suggestive interview procedure by a physician treating the infant complainant. Defendant also requests production of certain police reports (for which defendant attached subpoenas to the instant motion), records of Family Court proceedings, New York County (N1880-6/86), and Kings County (Na 407/9, Na 1502/94 [currently pending]), and records of the Child Welfare Administration (CWA) (formerly BCW and SSC).
On February 10, 1994, the Grand Jury indicted appellant for rape in the first degree (Penal Law § 130.35), sexual abuse in the first degree (Penal Law § 130.65), incest (Penal Law § 255.25), and endangering the welfare of a child (Penal Law § 260.10). These charges arose from allegations made by the defendant’s half sister (born Dec. 6, 1984) that defendant engaged in sexual conduct with her on the afternoon of December 31, 1993.
In determining this motion, the court has considered the defendant’s motion papers and the People’s papers in response.
FACTS
Defendant was arrested in this case on January 1, 1994. Defendant’s mother, Lucille M., and John C., his mother’s putative boyfriend, were also arrested on similar charges that day. The complaint report lists Brenda M. as the "victim”, and Ralph M., the defendant’s stepfather and Brenda’s father, as "reporter”.
The arrests arose during a hotly contested custody/visitation dispute between Lucille M. and Ralph M.
There is here a family history of abuse. In 1986, the defendant and his four half siblings were removed from their parents’ custody. Physical abuse findings were entered against Ralph M. (the reporter in this case); a finding of failure to protect the children from Ralph M.’s abuse was entered against Lucille M. At around the same time, Ralph M. allegedly sexually abused defendant and allegedly sexually abused Brenda M. in defendant’s presence.
At the time of this alleged incident, the children, including the defendant and the complainant, were living with their mother and not the stepfather, Ralph M.
Brenda M. was examined at Kings County Medical Center on January 1, 1994, by R. Reddy, M.D., who found evidence of "old” sexual abuse consisting of a hymenal tear. No Vitullo kit was used to test for the presence of semen. Brenda was *806 later examined by R. Switzer, M.D.,* who noted in Brenda’s medical record that Ralph M. had told the police that he suspected that Brenda had been sexually abused by the defendant. He also noted that: "When child was asked why do you think they brought you to the emergency room on January 1st and why you were brought to our clinic she said that she didn’t know. I then told her she was brought in because the police suspected she was touched on her vagina by her 16-year-old brother Michael. I then asked her, 'did Michael touch you down there?’ To which Brenda answered 'yes’.”
While this interview was apparently not the first interview of the complainant, the papers do not indicate the nature of the questioning at the other interviews.
POWER TO ENTERTAIN THE INSTANT MOTION
Since suggestive questioning of a witness by a civilian physician is not a ground for suppression listed in CPL article 710, defendant’s hearing request is not specifically authorized by the CPL.
Courts have recognized that evidentiary decisions relating to the admission of potentially prejudicial evidence can be made through pretrial motions, often referred to as motions in limine (see, Annotation, 63 ALR3d 311, § 2). The power of a trial court to grant such a motion is normally not mentioned in procedural rules, but found in the inherent power of a trial court to admit or exclude evidence (see, e.g., Luce v United States, 469 US 38, 41, n 4 [practice developed pursuant to District Court’s inherent authority to manage the course of trials]; United States v Valencia, 826 F2d 169, 171 [2d Cir 1987]; United States v Downing, 753 F2d 1224, 1241 [3d Cir 1985]; Emory v State, 420 NE2d 883, 884 [Ind]; Burrus v Silhavy, 155 Ind App 558, 293 NE2d 794, 796-798).
In New York, rules of evidence are based on the common law (see, People v Hughes, 59 NY2d 523, 542). A court’s power to admit or exclude evidence under the rules of evidence is inherent in its power to function as a court (see, Riglander v Star Co., 98 App Div 101, affd 181 NY 531; see also, People v Hughes, supra, 59 NY2d, at 542-545; cf., Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1). Also, inherent in determining the admissibility of evidence is the power of the *807 court to decide when and how the admissibility should be determined (i.e., during trial or pretrial; with or without a hearing, see, People v Hughes, supra; Cohn v Borchard Affiliations, 25 NY2d 237, 249-250; Matter of Grisi v Shainswit, 119 AD2d 418, 421; see also, Feldsberg v Nitschke, 49 NY2d 636, 643 ["(A)lthough there exist general rules for the conduct of trials, deviation from these rules may be necessary to fit the circumstances of a particular case”]; People v Olsen, 34 NY2d 349, 353; cf., People v Douglass, 60 NY2d 194, 205 [courts’ inherent power does not extend to dismissing information sua spontej).
Courts have recognized the right of a trial court to determine evidentiary matters at pretrial hearings, despite the lack of specific authorization in the CPL (see, e.g., People v Wesley, 83 NY2d 417, 424 [pretrial hearing to determine admissibility of DNA evidence]; People v Tunstall, 63 NY2d 1 [pretrial hearing to determine admissibility of prehypnotic recollection]; People v Hughes, supra, 59 NY2d, at 542-545 [same]; People v Ventimiglia, 52 NY2d 350, 362 [pretrial hearing to determine admissibility of prior uncharged crimes]; People v Sandoval, 34 NY2d 371, 374 [pretrial hearing to determine prosecutor’s use of prior conviction to impeach the defendant]; People v Wilson, 182 AD2d 734 [pretrial hearing to determine audibility of tape recording]; People v Colon, 180 AD2d 876, 879 [pretrial hearing on admissibility of breathalyzer test result]).
The court finds that it has the inherent power to entertain defendant’s motion, despite the lack of specific statutory authority.
MERITS OF DEFENDANT’S MOTION
Although the court has the power to entertain the motion, this does not mean that the court should exercise such authority.
A reliable determination of guilt or innocence is the essence of a criminal trial (People v Adams, 53 NY2d 241, 251). At trial, all relevant evidence is generally admissible unless its admission violates an exclusionary rule (People v Scarola, 71 NY2d 769, 777). Many of the exclusionary rules are based on determinations of the reliability of the evidence. For example, hearsay is excluded because it is presumptively unreliable (People v Brensic, 70 NY2d 9, 14; see also, Idaho v Wright, 497 US 805).
*808 This concern for evidentiary reliability or trustworthiness is also seen in rules relating to the admission of statements made while voluntarily intoxicated (People v Schompert, 19 NY2d 300, 306, cert denied 389 US 874), statements made during sleep (People v Jones, 165 AD2d 103, 109; People v Smith, 104 AD2d 160, 163-164), scientific evidence (People v Wesley, supra, 83 NY2d, at 422-423; Daubert v Merrell Dow Pharms., 509 US —, 113 S Ct 2786, 2795), identification testimony (People v Adams, supra, 53 NY2d, at 251), and hypnotically induced testimony (People v Hughes, supra, 59 NY2d, at 535). As such, the reliability of evidence is a prerequisite for its admission (see, People v Blackman, 110 AD2d 596, 598; see also, Manson v Brathwaite, 432 US 98, 114).
Here, the issue is whether suggestive questioning of a child complainant by a civilian rendered the child’s trial testimony so unreliable that it must be suppressed.
Where the evidence involves the in-court nonhearsay testimony of a witness, courts have generally found the oath and cross-examination sufficient tests of reliability to allow admission of the testimony (People v Brensic, supra, 70 NY2d, at 14). Testimony involving eyewitness identification and testimony resulting from hypnosis are exceptions to this general rule (see, People v Hughes, supra, 59 NY2d, at 535; People v Adams, supra, 53 NY2d, at 249-251). More important, the testimony in both situations is suppressed because it is rendered unreliable by suggestive procedures (People v Hughes, supra; People v Adams, supra). The suggestive procedures render the testimony unreliable because a person is prone to suggestion when he or she is identifying someone (United States v Wade, 388 US 218, 235-236), or under hypnosis (People v Hughes, supra). Because the reliability of the testimony is at issue in both situations, suppression is not dependent on State action (supra, at 542, 545 [decided under common-law rules of evidence, therefore, no requirement of State action]; People v Blackman, supra, 110 AD2d, at 598).
If a child witness is prone to the same sort of suggestion to which a person under hypnosis, or a person making an identification, is subject, a defendant should have the same or similar right to suppress testimony rendered unreliable by the suggestion. Likewise, this right should not depend on State action.
Psychological studies of investigatory interviews in child abuse cases indicate that suggestive interviewing techniques *809 can shape the child’s responses (see, State v Michaels, 136 NJ 299, 642 A2d 1372, 1377; 1 Myers, Evidence in Child Abuse and Neglect Cases § 4.5, at 232-237 [1992]; Goodman and Helgeson, Child Sexual Assault: Children’s Memory and the Law, 40 U Miami L Rev 181, 187 [1985]). The danger of obtaining inaccurate information in response to suggestive questioning is particularly high when children are asked to interpret ambiguous events. When they do not know the meaning of an event, they are likely to accept an adult’s interpretation (1 Myers, Evidence in Child Abuse and Neglect Cases § 4.5, at 233).
Children are also more likely to be led astray when discussing peripheral details of an event. The definition of peripheral and central, however, is defined from a child’s point of view, rather than an adult’s (id., § 4.5, at 233, n 88, quoting Spencer and Flin, The Evidence of Children: The Law and Psychology, at 253-254 [1990]). "Children are especially likely to accept an interviewer’s suggestions when they are younger, when they are interrogated after a long delay, when they feel intimidated by the interviewer, when the interviewer’s suggestions are strongly stated and frequently repeated, and when more than one interviewer makes the same suggestions” (Goodman and Clarke-Stewart, Suggestibility in Children’s Testimony: Implications for Sexual Abuse Investigations, in The Suggestibility of Children’s Recollections, at 103 [J. Doris ed 1990]).
Other factors that influence a child’s suggestibility include: (1) whether the interviewer believes in the presumption of guilt; (2) whether the interviewer vilifies or criticizes the suspect; (3) whether the questions asked are leading or non-leading; (4) whether the interviewer is a trusted authority figure (Myers, The Child Witness: Techniques for Direct Examination, Cross-Examination, and Impeachment, 18 Pac LJ 801, 889 [1987]; Goodman and Helgeson, op. cit, 40 U Miami L Rev, at 195). While mildly leading questions may be necessary to "open up” a shy child, the questions should not imply that the child is wrong if he or she does not admit to the abuse (i.e., "Did Uncle Harry touch you [with his] penis?” not "I bet Uncle Harry touched you [with his] penis, [didn’t he]?”) (Goodman and Helgeson, id., 40 U Miami L Rev, at 189). That an allegation occurs in the context of a custody dispute is an additional ground for caution (1 Myers, Evidence in Child Abuse and Neglect Cases § 4.4, at 226-227).
Courts have recognized the susceptibility of child witnesses to suggestion (Idaho v Wright, supra, 497 US, at 812-813; *810 People v Hudy, 73 NY2d 40, 57). In recognition of a child’s suggestibility, many courts have allowed the admission of expert testimony at trial on the effects of suggestive questioning (see, e.g., People v Alvarez, 159 Misc 2d 963, 965; Sheldon v State, 796 P2d 831 [Alaska]; People v Diefenderfer, 784 P2d 741 [Colo]; Timmons v State, 584 NE2d 1108 [Ind]; State v Erickson, 454 NW2d 624 [Minn]; State v Hadfield, 788 P2d 506 [Utah]). They also consider the suggestive nature of the questioning in evaluating the reliability of child hearsay testimony (see, e.g., Idaho v Wright, supra, 497 US, at 812-813; People v Zwart, 151 Ill 2d 37, 600 NE2d 1169).
The New Jersey Supreme Court has determined that there is sufficient consensus among experts to conclude that highly suggestive questioning techniques can distort a child’s recollection of events, undermining the reliability of the statements and subsequent testimony concerning such events (State v Michaels, supra, 136 NJ, 642 A2d, at 1379). In Michaels, the court found that the questioning of the child witnesses was so suggestive that it created a substantial risk that the statements elicited lacked sufficient reliability to justify their admission at trial (supra). For that reason, the court ordered a hearing to determine whether the children’s recollections were tainted and their in-court testimony should be barred as unreliable (supra, at 1380).
In contrast to Michaels (supra), the court in People v Alvarez (supra, 159 Misc 2d, at 965) found that there was no New York authority for the granting of such a hearing.
As previously indicated in this decision, the lack of specific authority is not an impediment to a court acting. This is especially true when the issue is the reliability of evidence to be admitted at trial.
The concern in Alvarez (supra) that a child witness would be required to endure additional proceedings could only occur if there is a showing that the interview procedures were unduly suggestive (People v Chipp, 75 NY2d 327, 336-339, cert denied 498 US 833). Once suggestibility is shown, the dictates of a fair trial supersede the infant’s inconvenience.
For these reasons, this court concludes that in an appropriate case a hearing should be held to determine whether a witness was subject to unduly suggestive or coercive questioning by governmental or nongovernmental personnel, and whether the potential trial testimony was thereby rendered unreliable (see, People v Blackman, 110 AD2d 596, supra).
*811 In determining whether defendant has alleged sufficient facts to merit a hearing, this court looks to the requirements that have evolved under CPL 710.60 for guidance. Sufficiency of factual allegations is considered in light of the motion papers, the context of the case, and defendant’s access to information (People v Mendoza, 82 NY2d 415, 426).
Interviews of complaining witnesses generally take place outside the presence of the defendant. As with a motion to suppress identification testimony, it would be unreasonable to expect precise factual averments in a situation where a defendant also "does not have access to or awareness of the facts necessary to support suppression” (People v Mendoza, supra, 82 NY2d, at 429; CPL 710.60 [3]). In light of a defendant’s lack of access to information relating to witness interviews, the inability to make factual allegations relating to them is reasonable.
In this matter, the 10-year-old complainant did not know why she was brought to the clinic. Dr. Switzer told her that she had been brought in because the police suspected that the defendant had touched her on her vagina. Dr. Switzer then asked the complainant whether the defendant had touched her there. The complainant answered yes. In asking the question in this manner, the doctor suggested both the nature of the abuse and the person responsible. Moreover, these allegations arose in the context of a family custody battle, a situation where the allegations should be viewed with caution (1 Myers, Evidence in Child Abuse and Neglect Cases § 4.4, at 227).
There is also a history of abuse by the "reporter” of this incident against the complainant and defendant. Defendant raises a claim of suggestive questioning on the face of his papers.
This interview (apparently) occurred after several interviews of the complainant. As such, this one interview may not have rendered Brenda’s accusations unreliable. Defendant’s failure to include allegations relating to the other interviews is reasonable in light of his lack of access to the interview process. Since the People have not presented evidence showing that the other interviews were not suggestive, this one interview raises a factual question as to suggestion in the interview process.
For these reasons, the court finds defendant has alleged sufficient facts to warrant a hearing.
*812 PARAMETERS OF THE HEARING
Procedures developed in the context of other suppression hearings provide guidance on how to conduct this hearing. Given the People’s control of access to information regarding the initial interviews of the complainant, the People will bear the initial burden of going forward to show that the interviews of the complaining witness were not so suggestive as to create a substantial risk of rendering the in-court testimony unreliable (see, People v Wise, 46 NY2d 321, 329; see also, State v Michaels, supra, 642 A2d, at 1379). The defendant, however, will have the ultimate burden of proof on this point (see, People v Chipp, supra, 75 NY2d, at 335; People v Di Stefano, 38 NY2d 640, 652). Since it is the suggestibility of the interview techniques that will be at issue, the presence of the complainant will not be necessary (see, People v Chipp, supra, 75 NY2d, at 336-339). Evidence that may be relevant to this determination includes any record of the interviews themselves (notes, audiotapes, videotapes, etc.), testimony of the interviewers and anyone present, learned treatises on the issue, and expert testimony. The hearing will not be limited to Dr. Switzer, but will also include police interviews.
If defendant meets his burden of showing suggestibility of the questioning, the burden would then shift to the People to show by clear and convincing evidence that the complainant’s potential testimony has not been tainted by the suggestive questioning (People v Chipp, supra, 75 NY2d, at 335; People v Hughes, supra, 59 NY2d, at 547; State v Michaels, supra, 136 NJ, 642 A2d, at 1372). Since it is possible to suggest both the fact of abuse (especially where the conduct is ambiguous), and the abuser to child witnesses (Goodman and Clarke-Stewart, The Suggestibility of Children’s Recollections, op. cit., at 103; 1 Myers, Evidence in Child Abuse and Neglect Cases § 4.5, at 233), the scope of suppression will extend to any testimony of a fact found to be suggested and not based on an independent recollection (see, State v Michaels, supra).
defendant’s discovery requests
Defendant also moves for an order to produce certain police reports, records of Family Court proceedings, and records from CWA and St. Vincent. In the alternative, defendant requests that the court conduct an in camera inspection of the documents. Defendant alleges that he may introduce the documents at a hearing or at trial, and that the documents may *813 show bias on the part of Ralph M. In addition, defendant alleges that the Family Court, CWA, and St. Vincent records will contain Brady- and Rosario-type material.
A subpoena may not be used as a discovery device or to ascertain the existence of evidence (Matter of Terry D., 81 NY2d 1042, 1044; Matter of Decrosta v State Police Lab., 182 AD2d 930, 931). Its purpose is to compel the " ' "production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding” ’ ” (Matter of Terry D., supra, 81 NY2d, at 1044). A showing that certain documents carry potential for establishing relevant evidence is insufficient; a defendant must make " 'some factual predicate’ ” (Matter of Constantine v Leto, 157 AD2d 376, 378, affd 77 NY2d 975).
As to the police reports, CWA and St. Vincent records, defendant has only alleged that the documents carry potential for establishing relevant evidence. The defendant has failed to make a specific factual predicate (see, Matter of Constantine v Leto, supra, at 378). The CWA and St. Vincent records are not in the possession of the prosecution and therefore they cannot be obtained from the District Attorney. The District Attorney has no obligation to obtain documents from St. Vincent or CWA.
With regard to defendant’s request for Family Court records, this court does not rule on the merits of defendant’s request. It finds that it is not the proper place to request Family Court records. Such an application must be made directly to the Family Court (see, Family Ct Act § 166; Matter of Herald Co. v Mariani, 67 NY2d 668, 669-670; Matter of Richard S. v City of New York, 32 NY2d 592; Royal Globe Ins. Co. v Mottola, 89 AD2d 907, 908; but see, People v Price, 100 Misc 2d 372).
Defendant’s request for production of documents is denied.
The motion is granted in part, and denied in part.

 The defendant does not allege the date of this later examination. The People allege that this occurred on January 21, 1994, three weeks after Brenda was examined by Dr. Reddy.