**STATE of Missouri, Respondent,**

v.

**Robert FOUST, Appellant.**

**Robert FOUST, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 64815, 68261.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 7, 1996.

Arthur S. Margulis, David Redmond Crosby, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

CRAHAN, Presiding Judge.

Defendant appeals following his conviction on three of four counts of sexual abuse in the first degree and acquittal of one count of assault in the third degree. Defendant was sentenced in accordance with the jury's recommendation to two consecutive six month terms of imprisonment in the county jail and fined a total of $7,500.00. Defendant also appeals denial of his Rule 29.15 motion following an evidentiary hearing. The dispositive issue on appeal is defendant's claim that the trial court erroneously and prejudicially excluded relevant evidence on the ground that it was hearsay. We reverse and remand for a new trial.

Defendant does not challenge the sufficiency of the evidence to support his convictions. All of the charges pertain to Defendant's alleged improper touching of four young girls on a bus provided by the First Baptist Church of Arnold, Missouri while transporting a group of approximately twenty children to Sunday School. Defendant, a grandfather and member of the church for approximately thirty-five years, acted as the "bus captain," and was responsible for maintaining order on the bus. Aside from Defendant and the bus driver, two women passengers were also on the bus. The bus driver and one of the women passengers testified that they did not see Defendant engage in any inappropriate behavior on the dates in question or at any other time. The other woman passenger did not testify.

All of the alleged victims were between seven and nine years old at the time of the incidents. Because the number of alleged victims makes the use of initials confusing, we will refer to them by the pseudonyms of Ann, Terry, Mary and Polly. Ann is Mary's aunt.

In Count I, Defendant was charged with first degree sexual abuse upon Terry. Terry testified that while riding the bus, Defendant touched her between the legs and underneath her clothing. She said Defendant told her not to tell anyone, saying that it was their "little secret."

During Terry's cross examination, as defense counsel attempted to clarify the circumstances that prompted Terry to report the incident to her stepmother, the following transpired:

Q: Did she [stepmother] ask you about it first or did you just go tell her first?

A: She asked me.

Q: And what did she ask you?

MS. MELTON: Objection, calls for hearsay.

THE COURT: It's overruled.

A: Should I answer?

THE COURT: Yes.

A: What was the question?

Q: What did [stepmother] ask you?

A: She asked me if anything had happened 'cause she heard on the phone that someone had told her about—

MS. MELTON: Objection, hearsay.

THE COURT: Sustained as to what someone else heard on the phone. That's secondary hearsay. As to what she asked is another matter, and I allow that in. That objection is sustained. Ask you next question, counselor.

MR. LOFFTUS: May we approach, your Honor?

THE COURT: Yes.

*At the Bench, Out of the Hearing of the Jury:*

MR. LOFFTUS: She never did finish the answer, and she didn't say anything that anybody else said. She started to say what she heard.

THE COURT: Well, that's not the answer she gave, Mr. Lofftus. She said that someone said on the phone, and went on into a narrative that is beyond the scope of the question.

Your question was what did [stepmother] ask her, not what [stepmother] told her.

MR. LOFFTUS: She was repeating what her stepmother had asked her.

THE COURT: She answered that, and then she began to elaborate on what her stepmother told her she heard on the phone.

MR. LOFFTUS: That's the whole point of this question is that the mother told her the things that she's repeating.

THE COURT: That objection is still sustained. It's irrelevant.

MR. LOFFTUS: It's what?

THE COURT: It's irrelevant.

MR. LOFFTUS: It's irrelevant that—

THE COURT: It's hearsay and it's irrelevant, the balance of what she was stating was nonresponsive.

\* \* \*

Later, while questioning Terry about her deposition testimony, the following occurred.:

Q: Did you tell me, "She asked me if Bob [Defendant] did that because she heard about other kids, that that had happened to them?"

A: I think I remember.

Q: When [stepmother] said that to you, did she tell you what she had heard about the other kids and what "that had happened to them" meant?

A: What?

Q: When [stepmother] was telling you about what had happened to the other kids, what did she tell you?

MS. MELTON: Objection, your Honor; calls for hearsay.

*At the Bench, Out of the Hearing of the Jury:*

THE COURT: Now, Mr. Lofftus, why is that question that you have asked, why is the response not hearsay that you expect that I can rule on? It is an out-of-court statement by a person not under oath, not otherwise admissible that I'm aware of. Can you tell me why it is not hearsay?

MR. LOFFTUS: It is not being submitted to prove the truth of the matter submitted but only to prove their mother, stepmother said it to her. I don't care whether it's true or false. I'm not trying to prove what she said was true. What I'm trying to prove is that she said it to her stepdaughter.

THE COURT: Why is that relevant?

MR. LOFFTUS: Because throughout this case the police led the children into saying things, the mothers led the children into saying things, and it's obvious from almost everybody's testimony that these kids were asked leading questions. And this is one of them.

THE COURT: Why is that relevant to the facts at trial today?

MR. LOFFTUS: Because the children are susceptible to suggestions. The children are of a tender age. If you ask them a question such as to give you an example at the taped interview with the police officer, [Polly] said in response to what is your private part, she said over my legs.

The police officer said, "Oh, you mean between your legs?" And she said, "Yes."

And then he asked her if he touched her private parts. And she said, "I don't know." And then he suggested to her, "Did he put his hands between your legs and touch your private parts?" And she said, "Yes, he did." Then she says today, "I'm sorry, that didn't really happen. He only touched me on the leg." And the police officer suggested it to her. He's an authority figure.

THE COURT: I'm not interested in the police officer at this point but I am interested in the stepmother, what she had to say. The objection is sustained.

\*     \*     \*

Later, Terry's stepmother testified that she had received a call from the church informing her that "something had happened" on the bus and that "someone had been accused of something" but she denied being told what had occurred or who had been accused. She said she turned to her children watching TV, five of whom rode the church bus, and asked "Does anybody know what's going on on the church bus?" They all said no. Within a half hour, however, Terry called her into the bathroom and told her that Defendant had put his hands under her dress and underwear and told her not to tell anyone because it's "their little secret." Stepmother then called the church and the police department.

Defendant denied that he had ever touched Terry inappropriately. Defendant also presented evidence that Terry's stepmother had a bad reputation for truth and veracity. The jury convicted Defendant of sexual abuse in the first degree upon Terry and recommended a sentence of six months in the county jail and a fine to be determined by the court.

In Counts II and III, Defendant was charged with first degree sexual abuse upon Mary. Mary testified that on November 15, 1992, Defendant sat down next to her and Ann while they were riding the bus. Mary testified that Defendant touched her on the

"chest," "butt" and "privates." Although she first testified she could not remember whether Defendant touched her on top or underneath her clothes, Mary later said it was underneath her underwear. Mary also testified that Defendant told her not to tell anyone about the touching and gave her a quarter. On cross-examination, Defendant's counsel attempted to question Mary about whether her mother had asked her where the quarter came from. The prosecutor's hearsay objection was sustained.

Defendant testified that he did give Mary a quarter. According to Defendant, Mary had asked to be bounced on his knee in a "horsey ride," an activity he had previously engaged in with Mary and the other children on many occasions.[1] Defendant claimed that while bouncing Mary on his knee, a quarter fell out of his pocket and Mary grabbed it. According to Defendant, he and Mary grabbed the quarter from each other periodically throughout the remainder of the bus ride and he finally told her she could keep it and put it in her bank. Defendant's theory at trial was that Mary invented the story of Defendant's touching because she did not want to admit to her mother how she actually got the quarter. The jury convicted Defendant of two counts of sexual abuse in the first degree upon Mary, recommending a sentence of six months in the county jail and a fine on Count II and a fine to be determined by the court for Count III.

In Count IV, Defendant was charged with first degree sexual abuse of Mary's aunt, Ann, on the same date. Ann testified that Defendant touched her between her legs and on her chest while she was sitting in a bus seat with Mary in between them. Mary and Ann both disclosed the alleged abuse on the date of the incidents and were taken to the church that afternoon to discuss their disclosures with church officials. Ann initially reported to the police that she had seen Defendant touch Mary but testified at trial that she did not see this happen. There was also evidence that at the preliminary hearing Ann told the judge she did not see Defendant touch Mary and that she lied to the police

1. Mary denied on cross-examination that she "used to ride horsey on [Defendant's] knee."

because Mary told her to do so. Mary testified that she did not know if she had asked Ann to tell the police she saw Defendant touch her. The jury acquitted Defendant of the charge of first degree sexual abuse upon Ann.

In Count V, Defendant was charged with misdemeanor assault in the third degree upon Polly by causing physical contact with her knowing she would regard it as offensive or provocative. Polly testified Defendant touched her on her leg above her knee in a manner she did not like. Defendant did not dispute that he may have touched Polly or other children on the leg, but denied any inappropriate contact and denied any notice the child found the contact offensive. The jury acquitted Defendant of this charge.

In his first point of error, Defendant claims the trial court erred in prohibiting Defendant from cross-examining Terry and Mary as set forth in detail above because the evidence was neither hearsay nor irrelevant. We agree.

■ Contrary to the statements of the trial court, all out-of-court statements are not hearsay which must be excluded unless shown to fall within a recognized exception. Hearsay is testimony· containing an out-of-court statement, not made by the declarant nor under oath, offered to prove the truth of the matter asserted. *State v. Shaw*, 847 S.W.2d 768, 776–77 (Mo. banc 1993); *cert denied*, —— U.S. ——, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993). If the statement is not offered for the truth of the matter asserted, there is no basis for requiring the proponent of the testimony to fit within an exception to the hearsay rule because the testimony is not hearsay. Exceptions to the hearsay rule are relevant only when the statement *is* offered for the truth of the matter asserted—*e.g.*, dying declarations, excited utterances, business records, etc.

■ A statement offered to explain the subsequent conduct of one who heard the statement is not inadmissible hearsay. *State v. Leisure*, 796 S.W.2d 875, 880 (Mo.banc 1990). Here, defense counsel sought to explore the circumstances under which Mary first made her complaint of sexual abuse.

This questioning was proper and not within the hearsay rule if it sought to explain why Mary might have fabricated her story of sexual abuse on the bus. Since the allegation of abuse came as a response to Mary's mother's questioning of Mary as to where she got money, the circumstances surrounding that questioning are relevant.

■ The testimony sought to be elicited from Terry was an effort to show how Terry perceived what her stepmother said and how that perception shaped her answers to her stepmother's inquiry. The testimony was not sought for the truth of the matter asserted. Indeed it would be illogical for defense counsel to do so since Defendant was attempting to refute the assertion that abuse had occurred on the bus. *See State v. Shaw*, 847 S.W.2d at 777 (where state's burden was to prove statement elicited was false, out-of-court statement elicited by state could not have been offered to prove the truth of the matters asserted and thus was not hearsay). Terry's testimony as to what her stepmother said was not hearsay and the court erred in excluding it.

■ In its brief, the State does not attempt to defend the trial court's rulings on the ground that the excluded testimony was hearsay. Instead, the State argues that (1) Defendant failed to preserve the issue by failing to make a specific offer of proof as to what Mary and Terry would have said and (2) Defendant was not prejudiced in any event because Defendant was permitted to inquire of Mary's mother and Terry's stepmother as to what either of them may have said to the girls. Neither argument is persuasive.

Although the better procedure would have been to obtain the girls' responses to the questions on the record outside the hearing of the jury, counsel's explanation was sufficient to apprise the court of the reasons why the State's hearsay objection was without merit. It is not clear that defense counsel knew precisely what either girl's answer would have been but it was clear that counsel was seeking to place whatever response the girls might make before the jury so the jury could evaluate whether the crucial question-

ing of the girls was suggestive. Inasmuch as the only objection before the court was that the response would be hearsay, we see no reason why Defendant need be more specific than necessary to apprise the court of the reason why the testimony was not hearsay.

■ We recognize that the trial court stated on the record that it was also excluding Terry's testimony about her mother's statements on the ground that it was irrelevant. This ruling was both improper and incorrect. It was improper because the State did not object on relevance grounds. It is incorrect because, as this court and others have recognized, children are susceptible to suggestive interview techniques and the circumstances surrounding the questioning of the child is a proper subject of inquiry. *See State v. Sloan,* 912 S.W.2d 592, 596 (Mo. App.1995); *Idaho v. Wright,* 497 U.S. 805, 812–813, 110 S.Ct. 3139, 3144–45, 111 L.Ed.2d 638 (1990); *State v. Michaels,* 136 N.J. 299, 642 A.2d 1372, 1377 (1994); *People v. Michael M.,* 162 Misc.2d 803, 618 N.Y.S.2d 171, 176–78 (Sup.1994); *State v. Kirschbaum,* 535 N.W.2d 462, 466–67 (Wis.App.1995).

■ As for the State's lack of prejudice argument, the record indicates that in her deposition, excluded on other grounds, Terry's recollection of what her stepmother said was significantly more detailed than what her stepmother described in her testimony. According to the portion of Terry's deposition quoted but excluded on cross-examination, Terry's stepmother asked her "did Bob [Defendant] do that because she [stepmother] heard from other kids that that happened to them." If so, this would be flatly inconsistent with her stepmother's testimony that the stepmother was told nothing of what was alleged to have transpired on the bus in her telephone conversation with church officials, and was not told who had been accused (and thus had not relayed any of this to Terry).

This is not a case in which there was overwhelming evidence of Defendant's guilt. Defendant was acquitted on two of the five counts. As for the counts of which Defendant was convicted, there was conflicting evidence. There was evidence that one of the alleged victims had asked another to lie in support of her allegations. The credibility of the alleged victims was crucial to the case. The possibility of suggestive interview techniques was a major theme of Defendant's case.

■ A criminal defendant is constitutionally guaranteed the right under the Sixth Amendment to confront the witnesses against him and to have the opportunity for effective cross examination of any witnesses who appear and testify against him. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). Of these guarantees, the "primary interest secured by 'the confrontation clause' is the right of cross-examination." *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987). We acknowledge that the trial court is vested with broad discretion over questions concerning the relevance and admissibility of evidence. *State v. Coats,* 835 S.W.2d 430, 433 (Mo.App.1992). In this instance however, the evidence was excluded based on an erroneous declaration and application of the law, not on the basis of discretion. There is no suggestion that defense counsel's questioning of the children was badgering in tone or unduly lengthy. Based on our review of the entire record, we cannot dismiss these rulings as harmless error. The possibility of suggestion inherent in the initial questioning of Mary and Terry as to their allegations of abuse was a relevant subject of inquiry and the excluded evidence was not hearsay. We therefore reverse the judgment and remand for a new trial.

■ Defendant's remaining points pertain to issues that may not arise on retrial. We note, however, that throughout defense counsel's cross-examination of witnesses, the prosecutor repeatedly objected that the questions were "improper impeachment." Many of those objections were sustained. During its deliberations, the jury sent a note to the judge requesting an explanation of "improper impeachment," which the court properly answered with the admonition that the jury should be guided by the instructions. The note, however, raises a legitimate concern that the jury may have been confused about whether evidence admitted for purposes of impeachment could be considered. To avoid

this problem, the trial court should insist that the counsel for both parties state their objections in a proper form. In most instances, the proper objection would have been failure to lay a proper foundation. "Improper impeachment" is not a proper objection and should not be permitted.

For the foregoing reasons, we reverse the judgment and sentence and remand for a new trial on Counts I, II, and III. Defendant's appeal of the denial of his Rule 29.15 motion is denied as moot.

CRANDALL and DOWD, JJ., concur.