**STATE of Missouri, Plaintiff–Respondent,**

v.

**Pietro BIEZER, Defendant–Appellant.**

**No. 70491.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 24, 1997.

Robert E. Steele, Jr., Asst. Public Defender, St. Louis, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for Plaintiff–Respondent.

HOFF, Judge.

Pietro Biezer (Defendant) appeals the judgment entered upon his convictions by a jury of four counts of sodomy, § 566.060 RSMo 1994, two counts of first degree statutory rape, § 566.032 RSMo 1994, four counts of first degree statutory sodomy, § 566.062 RSMo 1994, one count of forcible rape, § 566.030 RSMo 1994, and one count of forcible sodomy, § 566.060 RSMo 1994. The evidence viewed in the light most favorable to

the verdicts indicates that over a period of months, Defendant engaged in sexual activities with Y.J., his eleven year old grandniece, and her eleven and seventeen year old friends, A.W. and R.D. We affirm.

In his first point, Defendant contends the trial court erred in excluding the expert testimony of defense witness, Dr. Ann Duncan. Dr. Duncan's testimony was offered to challenge the interviewing techniques of Officer Sheldon Wight, the police officer who interviewed the victims. Defendant asserts Dr. Duncan's testimony was relevant evidence of a scientific and specialized nature and would have aided the jury in assessing the reliability of Officer Wight's interviewing techniques and in determining what weight to credit the testimony. By excluding Dr. Duncan's testimony, Defendant argues the trial court committed prejudicial error and denied him a fair trial and due process of law in violation of his rights under the United States and Missouri Constitutions.

■■■ It is within the trial court's discretion to allow or exclude expert testimony. *State v. Seddens*, 878 S.W.2d 89, 92 (Mo.App. E.D.1994). However, general expert testimony regarding the credibility of witnesses is inadmissible because it invades the province of the jury. *State v. Whitmill*, 780 S.W.2d 45, 47 (Mo. banc 1989).

■■■ In child sexual abuse cases, two types of expert testimony are typically challenged: (1) "profile" testimony which describes behaviors and other characteristics commonly observed in sexual abuse victims; and (2) particularized testimony concerning the alleged victim's credibility. *State v. Williams*, 858 S.W.2d 796, 798–799 (Mo.App. E.D.1993). Although the trial court has great discretion in admitting the former, the latter usurps the province of the jury and, therefore, is inadmissible. *Id.* In other words, an expert will not be allowed to proffer opinion testimony concerning a particular witness' credibility. *Id.*

Defendant cites *State v. Sloan*, 912 S.W.2d 592 (Mo.App. E.D.1995) in support of his contention that Dr. Duncan's testimony was proper. In *Sloan*, the defendant, Rodney Sloan, was convicted of sexually abusing and sodomizing a six year old child. *Id.* at 594. The victim's mother had phoned in a "hotline" call to the Division of Family Services (DFS) to report her suspicion that her daughter had been sexually abused by Sloan. *Id.* Four days later, the "hotline" operator and a detective working for the sheriff's department interviewed the victim at her grade school. *Id.* The victim's mother was present during the interview. *Id.* A month later, the detective interviewed the victim for a second time on audiotape with the victim's mother present. *Id.* At trial, the police officer and social worker who interviewed the child testified that the child had volunteered Sloan's name as the person who had sexually abused her. *Id.*

On appeal, Sloan contended the trial court erred in not allowing Dr. Ann Duncan to testify as an expert regarding the interviewing techniques used in the investigation. *Id.* at 595. In Sloan's offer of proof, Dr. Duncan testified that the detective and the DFS worker had "double-teamed" the victim by both being present for the interview. *Id.* at 597 n. 3. Additionally, Dr. Duncan opined that allowing the victim's mother to remain in the room was improper and may have added to the pressure of the interview. *Id.* Dr. Duncan concluded "that this presented a particularly 'inappropriate' atmosphere that would have a tendency to taint the child's answers—a child of 6 or 7 would tend to respond with answers she believes would not 'get [her] in trouble.' " *Id.*

Additionally, Dr. Duncan testified that in incestuous relationships, the defendant usually has contact with the child "over a chronic course of conduct or chronic course of time ... which tends to escalate slowly and progress over time." *Id.* at 597 n. 4. "In Dr. Duncan's opinion, [in] the 6,000 cases she had reviewed in the past ..., the valid accounts [of sexual abuse] usually included [this] typical progression, whereas the fictitious statements often included fully executed serious sexual acts during the first incident." *Id.* Dr. Duncan concluded that in her opinion, the "assault-like" incident related by the victim was "questionable, especially from a seven [sic] year old." *Id.*

In *Sloan*, this Court found the offer of proof regarding Dr. Duncan's testimony was not to attack the credibility of the victim, but to show the state's interviewer acted improperly in dealing with the victim by using techniques and methods that were unreasonably suggestive. *Id.* at 596. We concluded that Dr. Duncan's testimony "represents evidence only an expert could give on matters not within the knowledge of a juror." *Id.* at 597. Additionally, we found it was a direct response to the state's interviewer's opinion and was neither "profile" testimony or particularized testimony concerning the victim's credibility. *Id.* at 596. Rather, we found it was evidence directed at the activities of the interviewers. *Id.* Accordingly, this Court found the trial court erred in excluding Dr. Duncan's testimony and reversed and remanded for new trial. *Id.*

In the case at bar, Officer Wight began an investigation after a DFS worker received a "hotline" call regarding the possible sexual abuse of Y.J. Early in the investigation, his attention was turned to Defendant. While working in his office at the police station, Officer Wight overheard another officer discussing a case involving "Uncle Pete." Recognizing the name as one used to describe Defendant, Officer Wight asked the other officer the full name of "Uncle Pete" and determined that Defendant had been accused of sexually molesting another eleven year old, A.W. Until Officer Wight discovered the connection between the two cases, this incident was treated as a separate investigation.

Soon after, Officer Wight interviewed A.W. who stated that she, as well as Y.J. and R.D., had been molested by Defendant during the same series of incidents. Thereafter, Officer Wight interviewed Y.J. and she revealed that Defendant had sexually molested her and A.W. and R.D. An interview of R.D. followed, at which time she revealed that she and A.W. and Y.J. had been sexually molested by Defendant. At trial, all three victims testified, as well as Officer Wight and the DFS worker.

After comparing the two cases, we find *Sloan* distinguishable from the case at bar. First, the victims in this case are much older than the victim in *Sloan*. The victim in *Sloan* was only six years old at the time of the incident. In this case, the victims were eleven, eleven, and seventeen. Dr. Duncan's testimony indicated that older children are less susceptible to suggestion. Second, the victims were not "double-teamed" by two or more interviewers at one time, nor were parents or relatives present during the interviews. Additionally, the victim in *Sloan* was interviewed at her grade school which may have added pressure to the interviewing process, which was not the case here. Third, the victim in *Sloan* related an "assault-like" incident which, according to Dr. Duncan, was "questionable, especially from a seven [sic] year old ." The victims in this case were older and described a course of conduct that escalated and progressed over time. Under Dr. Duncan's theory, these accounts were more credible. Finally, all three victims in this case testified as to the sexual abuse that was committed against each of them personally and which they witnessed against the other two victims. Each testified that they had been sexually abused on numerous occasions over several months by Defendant. The testimony of Officer Wight and the DFS worker substantiated these accounts. In *Sloan*, the police officer and DFS worker were the only witnesses to substantiate the testimony of the six year old victim.

The use of expert testimony regarding interviewing techniques in child sex abuse cases was questioned recently by the United States Court of Appeals, Eighth Circuit, in its recent opinion of *United States v. Rouse*, 111 F.3d 561 (8th Cir.1997). That court posed the problem with such expert testimony as follows:

> A qualified expert may explain to the jury the dangers of implanted memory and suggestive practices when interviewing or questioning child witnesses, but may not opine as to a child witness's credibility. That leaves a troublesome line for the trial judge to draw—as the expert applies his or her general opinions and experiences to the case at hand, at what point does this more specific opinion testimony become an undisguised, impermissible comment on a child victim's veracity?

111 F.3d at 571.

An expert's testimony regarding improper interviewing techniques in a child sex abuse

case runs the real risk of commenting on the victim's credibility, which is clearly impermissible under Missouri law. Additionally, such testimony injects a collateral issue into the case and may confuse and muddle the mission of the jury. Allowing such testimony may lead to a "battle of experts" and lead the jury away from the main issues in the case.

We restate that it is within the trial court's discretion to allow or exclude expert testimony. *Seddens,* 878 S.W.2d at 92. The purpose of expert testimony is to provide information that will assist the jury in an area in which they have no expertise. In addition, expert testimony must be relevant to the case at hand. In this case, defense counsel was not precluded from cross-examining witnesses regarding the interviews conducted by Officer Wight and the DFS worker. Here, expert testimony was not required given the ages of the victims, their lessened susceptibility to suggestion, and other corroborating witnesses. After reviewing the offer of proof of Dr. Duncan and the particularized facts in this case, this Court cannot conclude the trial court abused its discretion in denying this expert testimony. Point denied.

In his second point, Defendant contends the trial court erred by denying his motion for judgment of acquittal at the close of the evidence on the counts relating to forcible sodomy and forcible rape. Defendant argues the state failed to prove beyond a reasonable doubt that he committed these crimes against R.D. by force. In his third point, Defendant asserts the trial court erred in denying him an opportunity to cross-examine R.D. regarding her testimony before the grand jury.

We have reviewed Defendant's second and third points and find no error. Accordingly, we affirm these points in accordance with Rule 30.25(b).

Judgment affirmed.

GRIMM, P.J., and CRANE, J., concur.