**STATE of Missouri, Plaintiff–
Respondent,**

**v.**

**Samuel E. COBB, Defendant–
Appellant.**

**No. SD 30067.**

Missouri Court of Appeals,
Southern District,
Division One.

March 24, 2011.

Susan L. Hogan, Office of the State Public Defender, Kansas City, MO, for Appellant.

Chris Koster, Attorney General, and Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Samuel E. Cobb ("Defendant") appeals his convictions, following a jury trial, on ten counts of statutory sodomy in the first degree. *See* § 566.062, RSMo Cum.Supp. 2006. Defendant presents two claims of error, alleging that the trial court abused its discretion in (1) denying Defendant an opportunity to cross-examine a complaining witness, and (2) sustaining the State's motion to exclude expert testimony of a witness for the defense. Finding that Defendant is not entitled to any relief under either point, we affirm.

### Factual and Procedural Background

As Defendant does not challenge the sufficiency of the evidence, we recite only those facts pertinent to the issues raised on appeal.

H.A., born in March 1989, and D.A., born in June 1991, are brothers. Their parents, G.A. and S.A., separated in 1994. Afterward, H.A. and D.A. lived with their father in Buffalo, while their mother moved into Defendant's home in Mount Vernon. Following their father's death on April 18, 1995, H.A. and D.A. went to live with their mother and Defendant. The four of them later moved to rural Lawrence County.

In November 1997, H.A. was removed from the home amid allegations he had been physically abused by Defendant. During the ensuing investigation, D.A. was removed from the home in January 1998. Within five months thereafter, both boys went to live with their paternal grandparents, who were later granted their legal guardianship.

Soon after they moved in with their grandparents, difficulties arose. Both boys exhibited behavioral problems and were observed sexually acting out with each other. Individual therapy was provided to each boy, as well as family counseling. For a period of two or three years, each boy had bi-weekly counseling at the Forest Institute. The issues counseling was intended to address included their lying, stealing, and the sexual activity between the brothers. While both apparently related instances of physical abuse by their mother and Defendant, neither alleged that they had been sexually abused while living in their mother's home.

In February 2005, D.A. was removed from his grandparents' home after he was caught "sexually playing" with his five-year-old cousin. Soon after D.A. was removed, the grandparents relinquished custody of H.A., who "had a lot of anger issues that [the grandparents] couldn't reach[.]" D.A. was placed with a foster family for a short time before he was moved to Boys and Girls Town. H.A. was first placed in a foster home, and he later lived at the Boys Home in Verona. Counseling and therapy continued for each boy.

On March 16, 2005, a hotline call reported that D.A. was claiming he had been

sexually abused by his mother and Defendant while he lived in their home. After D.A.'s disclosure, H.A. was angry at D.A. because of his allegations. He was also angry at D.A. for molesting their young cousin.[1] At one point, D.A. told his therapist that most of his allegations regarding sexual abuse were not true, but he later recanted, claiming he denied the behavior had occurred so that H.A. would no longer be angry with him and because H.A.'s hostility toward him was hurtful, and he wanted to make things better between H.A. and him.

D.A. and H.A. were brought together for counseling sessions during which they discussed D.A.'s allegations and the events that D.A. remembered. A few days after one such session with his brother, H.A. awoke one morning and told the director of the group home that he remembered he "was in a corner and that [Defendant] had put [him] in [his mother's] underwear and [Defendant] masturbated [him] with that[.]" This was the first incident of sexual abuse he related to his counselor, Richard Jenkins. H.A. made other disclosures of his sexual abuse by Defendant to Jenkins only after Jenkins arranged for H.A. to be interviewed by a police officer at the Aurora police department on August 16, 2005.

Eventually, Defendant was tried before a jury on ten counts of statutory sodomy in the first degree. Three of the counts charged that Defendant had deviate sexual intercourse with D.A., who was less than fourteen years old, between January 1, 1997, and September 30, 1997. Seven counts charged Defendant with the same offense against H.A., also less than fourteen years old, committed on various dates between November 1996 and October 1997.

At Defendant's trial, H.A. testified that it was usually Defendant who disciplined him and his brother. Defendant beat them with belts and "anything he could grab[,]"; they were kicked, made to assume a squatting or push-up position for hours, were not allowed to go to bed, and at least once, Defendant pointed an unloaded gun at H.A.'s head, pulled the trigger, and told H.A. that he would kill them if H.A. told anyone. H.A. testified that he was afraid of Defendant and that Defendant told H.A. he had killed H.A.'s father by shoving him off a ladder while he worked.

H.A. also testified that he and his brother were sexually abused by both Defendant and their mother "two to four times a week." H.A. related that they would lead him to their bedroom at night and force him to watch them have sex. They would dress him in his mother's underpants and masturbate him. H.A. also stated that they forced him to put his mouth on their genitalia, and both his mother and Defendant did the same to him and forced him and D.A. to do the same to each other while they watched.

D.A. testified that he was subjected to similar abuse and also testified that Defendant had anal intercourse with him, placed his fingers in his anus, and forced D.A. to "give him oral sex." D.A. stated that "[p]retty much everything you could think of[,] we would have to do to one another."

H.A. and D.A. were questioned regarding the reasons they delayed reporting the sexual abuse for so many years in light of the length of time they had received counseling and therapy with various profession-

---

1. H.A. explained, "I didn't want another person to go through what we had gone through."

als and continuously denied being sexually abused. D.A. stated he didn't tell anyone about the sexual abuse earlier because he was afraid of Defendant; Defendant told him and H.A. that he would kill their grandparents or him and H.A. if they told anyone the things that he had done to them, and D.A. believed him. After they moved to live with their grandparents, D.A. still did not tell anyone because Defendant knew where his grandparents lived. Once he was moved to Boys Town, Defendant did not know where D.A. lived, and there were gates and doors that were locked, so D.A. did not have to worry about Defendant finding him.

H.A. testified that he did not report being sexually abused by Defendant to anyone, nor did he report that his brother was sexually abused, because he was too embarrassed to talk about it, and it was too difficult to open up to his counselors or even friends; he "didn't want it to be in [his] head."

The jury found Defendant guilty on all ten counts, and the trial court sentenced him as a prior offender to consecutive terms of twenty years' imprisonment on each count. Defendant timely appealed.

### Discussion

Defendant raises two points on appeal, and we address them in the order presented.

### Point I—Alleged Error in Limiting Defendant's Cross–Examination of H.A. was not Preserved for Appellate Review

In his first point, Defendant claims that "[t]he trial court abused its discretion in denying [him] the opportunity to cross-examine [H.A.] about the circumstances of the interview that took place at the Aurora

Police Department" on August 16, 2005. This claim was not properly preserved for appellate review.

"[T]o properly preserve an evidentiary issue for appellate review, an objection must be made upon introduction of the evidence; that objection must be reasserted as error in a motion for new trial; and the issue must be briefed on appeal." *State v. Robinson,* 194 S.W.3d 379, 380 (Mo.App.2006). "An allegation of error in a motion for new trial may not be changed or broadened on appeal." *State v. Johnson,* 943 S.W.2d 285, 291 (Mo.App.1997). Rule 29.11 distinctions regarding preservation of allegations of error during trial and post-trial serve to provide the trial court with an opportunity to correct its own decisions, narrow the issues on appeal, and ensure that a new or different theory is not advanced on appeal.[2] *State v. Pennington,* 24 S.W.3d 185, 187 (Mo.App. 2000).

On cross-examination, defense counsel attempted to question H.A. regarding his interview at the Aurora police department. Defendant contends that his trial counsel aimed "to bring out evidence that [H.A.] made his first allegation of sexual abuse after his most recent counselor, Richard Jenkins, took him to the police department to talk to an officer and accused [H.A.] of lying when he denied that any sexual abuse had occurred." The facts that Jenkins took H.A. to the police department and later accused H.A. of lying to a police officer, Defendant contends, would demonstrate that Jenkins "used questionable measures to get [H.A.] to say that he had been sexually abused[,]" in that H.A. first alleged he had been sexually abused "only after he was accused of lying to a police officer."

**2.** All rule references are to Missouri Court Rules (2010).

Defense counsel asked H.A. if he remembered Jenkins taking him to the Aurora police department where he was placed in a room with a detective. At that point, the State objected, arguing that H.A.'s visit to the police department involved the administration of a voice stress test on H. A., and counsel's reference to the interview without any explanation as to the purpose behind it was "opening a door" for admission of the fact that H.A. had taken and failed a voice stress test.[3] The State was concerned that testimony of a visit to the police department without any explanation would lead the jury to infer that H.A. was there for a criminal matter. Defense counsel countered that "the results of a voice stress test are inadmissible." The trial court sustained the State's objection.

Upon Defendant's request, the trial court heard an offer of proof, outside the presence of the jury. In that offer, H.A. testified that his purpose in going to the Aurora police department on August 16, 2005, was to take a voice stress test. He was told afterward that the results indicated he was not truthful when he said he had not been sexually abused. After the interview at the police department, Jenkins confronted H.A. about lying to the police officer. H.A. became upset and cried, and their session ended without any admission by H.A. During their next session, however, H.A. disclosed that Defendant had

touched his "butt[,]" and he continued to disclose other instances of sexual abuse in subsequent sessions.

After Defendant completed his offer of proof, defense counsel told the trial court that "[t]hey [referring to the jury] don't need to hear anything about that there was a machine going on or an officer thinks any sort of results from a machine, but it's important for the jury to hear, 'This is the circumstances that he makes this disclosure that's supposed to be truthful.'" Defense counsel proceeded to urge the trial court that "[t]he State's questions [asked during the offer of proof] all go to something that the Court can exclude; that is, whether or not there was a stress test given during the questioning and what the results are, which aren't reliable and not really something the jury should hear and influence their decision." The State, on the other hand, contended that counsel's questioning on this issue without evidence of the results of the test would suggest that coercion by police officers led H.A. to lie and say he had been sexually abused. The trial court denied the offer of proof and reiterated its sustention of the State's objection, stating, in part:

> Well, the Court's on the horns of a dilemma here. If we allow [Defendant] to go into the questions that were asked, ... you bring this up to the trough to drink as far as the jury is concerned and then you're just going to stop there

---

**3.** Before trial, Defendant filed a motion in limine requesting an order "prohibiting the prosecuting attorney or any witness from eliciting testimony about, introducing or attempting to introduce evidence about, mentioning or referring to, at any time during the course of the trial, in the presence of the hearing of the jury, evidence of voice stress tests undergone by ... any ... witnesses." Therein, Defendant asserted that "[t]he results of voice stress tests are inadmissible evidence[,]" and the fact that Defendant or any witness underwent such test "is not relevant to any material

issue or fact in the instant case, but is designed to mislead the jury as to the relevant issues[.]" Defendant also asserted that the admission of any such evidence would be so prejudicial to the defense that it would pose "a substantial risk of a verdict tainted by improper considerations."

During the pre-trial conference, the defense withdrew its motion and requested that the trial court delay its ruling on Defendant's motion in limine, reserving "that for the course of the trial[.]"

without any further explanation of why he's at the police station or what.

In his motion for new trial, however, Defendant changed his position [4] as to the admissibility of the voice stress test evidence and the nature of the alleged error by the trial court in excluding cross-examination of H.A. on the surrounding circumstances, asserting that:

> Critical to the defense of this case was the argument that having a victim undergo what amounts to a lie detector test normally reserved for persons *accused* of committing crimes is, at best, questionable technique in a supposedly therapeutic setting. Indeed, the argument would suggest Rich Jenkins' goal was investigative rather than therapeutic in nature, which was the inference intended for the jury to draw from ... cross-examination testimony of [H.A.].
>
> * * * *
>
> [H.A.'s] testimony as to the circumstances of the police interview was excluded *not on the basis of discretion, but on an erroneous application of the law.* Voice stress analysis in lay terms constitutes a lie detector test. Polygraph results are generally inadmissible in criminal trials. However, under the "rule of completeness," some polygraph evidence may be elicited to introduce the circumstances of a statement given during the test.
>
> * * * *
>
> The jury needed the evidence of [H.A.] undergoing a [voice stress test] as part of his 'therapy' in order to get a complete picture of his allegations. Therefore, under the 'rule of completeness,' Defendant should have been allowed to cross-examine [H.A.] as to the circumstances leading up to his allegations of sexual abuse.[ [5]]

(Emphasis added).

Now on appeal, in his first point relied on, Defendant contends that the trial court *abused its discretion* in not allowing defense counsel the opportunity to cross-examine H.A. in regard to the circumstances of the interview at the Aurora police department, "in that the interview at the police department ultimately led to [H.A.] making statements that [Defendant] had sexual contact" with H.A. when he was younger. Defendant now claims, contrary to his position in his motion for new trial, that "[t]he trial court's remarks in ruling on the offer of proof demonstrate that the court erroneously believed that allowing the requested cross-examination would open the door to evidence about the Voice Stress Test (VST)[.]"

---

**4.** During Defendant's trial, prior to making her offer of proof on cross-examination of H.A., defense counsel asserted, "I'm just getting into the fact that he was questioned by a police officer. I'm not going to mention the voice stress test." She further argued that she was not attempting to admit the results of the voice stress test, and upon further argument, counsel stated, "We're not asking any results, Your Honor. We're not asking for any results at all because the results of a voice stress test are inadmissible." Defense counsel stated she wanted to ask H.A. "if he was taken there and if he became upset and cried." Following Defendant's offer of proof, counsel argued that this line of questioning made no "reference that this is any sort of a test-that there's any sort of a test being done. It's just the fact that I think the jury needs to hear that it's only after he's taken to a police officer by his counselor, questioned, and then confronted by his counselor and saying, 'You're lying to this police officer,' that he starts-that's when he first starts to make an allegation and I think it's important for the jury to hear that under those course of circumstances is when he makes any sort of disclosure[.]"

**5.** Citing *State v. Baldwin*, 808 S.W.2d 384, 390 (Mo.App.1991), *infra*. All other citations have been omitted.

Defendant asserts that the voice stress test "itself remained inadmissible[,]" and "[i]t would have been neither proper nor necessary to allow the state to introduce evidence that [H.A.] took a VST and failed on the question about whether he had been sexually abused." Further, Defendant argues:

That [H.A.] took and failed a VST was not admissible and was not relevant to any of the issues in the case. What was relevant and material to the jury's assessment of [H.A.'s] credibility and veracity were the circumstances under which he first claimed to have been sexually abused. The jury should have been informed that [H.A.] first started to say that he had been sexually abused *after* he denied abuse to a police officer and *after* he was accused of lying to the officer. The suggestibility inherent in having a police officer involved with the questioning was the important aspect of the interview and may well have made a difference in how the jury viewed [H.A.'s] credibility and veracity.

The claim Defendant raises here on appeal is not the same as or consistent with the claimed error in his motion for new trial. In his motion for new trial, Defendant expressly disclaimed any abuse of discretion by the trial court in sustaining the State's objection to this line of questioning, but rather claimed that the trial court erroneously applied the law in concluding the voice stress test evidence was not admissible. Defendant took the position in his motion for new trial that the voice stress test evidence was admissible under the rule of completeness and that the trial court erred in excluding it along with the other circumstances surrounding the events at the Aurora police department on August 16, 2005. Now on appeal, Defendant takes the contrary position that the voice stress test evidence was inadmissible and that the trial court's belief that it was admissible under the rule of completeness gave rise to an abuse of discretion in excluding the other facts surrounding the events at the Aurora police department on that date.

Therefore, Defendant's claim of trial court error under his first point was not raised in his motion for new trial and was not preserved for our appellate review. *See Robinson,* 194 S.W.3d at 380; *Johnson,* 943 S.W.2d at 291. Point I is denied.

### Point II—Defendant's Proffered Expert Testimony was not Admissible

■ In his second point, Defendant claims that the trial court abused its discretion in sustaining the State's motion to exclude expert testimony as a sanction for Defendant's failure to comply with the trial court's order. Testimony from Dr. Rosalyn Schultz, who had been endorsed as a witness for the defense, was excluded on the first morning of trial due to Defendant's failure to provide to the State a synopsis of Dr. Schultz's proposed testimony on or before October 14, 2008, as ordered by the trial court on September 24, 2008. On the second day of trial, Defendant renewed his request to call Dr. Schultz as an expert witness by making an offer of proof consisting of a document that defense counsel described as Dr. Schultz's "background and the notes she made concerning this case[.]" The State objected to the form of the offer of proof. The trial court designated this document as an offer of proof but denied Defendant's request to call Dr. Schultz as a witness.

Defendant contends that the exclusion of Dr. Schultz's testimony violated Defendant's rights to due process, to present a defense, and to a fair trial, in that the State had ample notice of the endorsement of Dr. Schultz, the State was well aware of the nature of her potential testimony, and

because her testimony would have aided the defense. Central to Defendant's claim under this point is his contention that Dr. Schultz "was expected to testify that therapist Rick Jenkins used questionable techniques in counseling [H.A.], with the result that Mr. Jenkins unduly influenced [H.A.] to claim that he had been sexually abused by his mother and [Defendant][,]" or, as articulated to the trial court in Defendant's motion for new trial, Dr. Schultz's testimony was relevant "to the jury's determination of the credibility and veracity of the boys' testimony at trial."

The State contends that the trial court's initial exclusion of this testimony was a proper sanction, that Defendant's offer of proof was not sufficient to preserve the issue for appeal, and that Dr. Schultz's testimony was, nevertheless, inadmissible in any event. Because we agree with the State's last contention, we need not address the propriety of the sanction or the sufficiency of the Defendant's offer of proof.

On appeal, Defendant claims that "[b]ecause of the type of case and length of time between the alleged acts and the trial, [Defendant] was limited to denying the alleged acts took place and impeaching the complaining witness." Defendant alleges that "Dr. Schultz could have testified that [H.A.'s] most recent therapist, Rich Jenkins, used questionable techniques in counseling [H.A.]" and that her "testimony would have shown that Mr. Jenkins unduly influenced [H.A.] to claim that his mother and [Defendant] had sexually abused [H.A.] when he was still a small child." Defendant points specifically to testimony from H.A. and D.A. demonstrating that, after several years of counseling during which time both boys denied having been sexually abused, D.A. made his first allegations of sexual abuse in March 2005 after he was accused of molesting his young

cousin and H.A. first claimed he had been sexually abused during a counseling session with Richard Jenkins in October 2005 after he had become upset and cried when Jenkins accused him of lying to a police officer when he denied being sexually abused by his mother. Defendant asserts that Jenkins pressured H.A. to say he had been sexually abused, in that, in August 2005, Jenkins took H.A. to the police station for a voice stress test and later confronted H.A. with the results and accused him of lying.

A trial court's ruling excluding evidence is reviewed for abuse of discretion, meaning that its ruling was clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. *Claus v. Intrigue Hotels, L.L.C.*, 328 S.W.3d 777, 784 (Mo.App.2010). When there exists any recognizable ground on which the trial court could have rejected the evidence, its ruling will be upheld. *Id.*

An examination of the facts and circumstances of this case compels our finding that Dr. Schultz's testimony would have been inadmissible regardless of its initial exclusion as a sanction. "To be admissible, evidence must be relevant." *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007). Because expert testimony is laden with questions of competency and relevancy, admission of expert testimony is generally within the trial court's sound discretion and will not be reversed absent a showing of abuse of discretion. *State v. Wright*, 247 S.W.3d 161, 165 (Mo.App. 2008). "In ruling on the admissibility of expert testimony, the trial court considers whether such testimony assists the jury or if it unnecessarily diverts the jury's attention from relevant issues." *State v. Davis*, 32 S.W.3d 603, 608 (Mo.App.2000). Defendant sought to allow Dr. Schultz to testify

as an expert witness in order to demonstrate that counselor "Rich Jenkins used questionable measures to get H.A. to say that he had been sexually abused." In other words, Defendant intended for Dr. Schultz's testimony to challenge the reliability or credibility of H.A.'s claim he had been sexually abused by Defendant.

As support for his argument regarding the necessity and admissibility of Dr. Schultz's expert testimony, Defendant states, "Whether investigators used proper questioning techniques in interviewing an alleged victim of child sexual abuse is an appropriate matter for expert testimony[,]" citing to *State v. Sloan*, 912 S.W.2d 592, 596–97 (Mo.App.1995).[6] Defendant, however, reads *Sloan* much too broadly. The analysis in *Sloan* focused on allegations of unreasonably suggestive interviewing techniques used with *child* witnesses. *See id.* The Eastern District of our Court, noting that Missouri courts had not yet decided the issue, analyzed decisions in other jurisdictions that "recognized child witnesses are susceptible to suggestive interview techniques." *Id.*

*State v. Foust*, 920 S.W.2d 949 (Mo.App. 1996), another Eastern District case, cited to *Sloan* for this proposition, but appropriately stated the premise as "children are susceptible to suggestive interview tech-niques and the circumstances surrounding the questioning of the child is a proper subject of inquiry." *Foust*, 920 S.W.2d at 955.

However, in *State v. Biezer*, 947 S.W.2d 540 (Mo.App.1997), the Eastern District distinguished the decision in *Sloan*, in part, based upon the ages of the victims, noting that the victim witnesses were ages eleven and seventeen, and further recognized that the decision in *Sloan* was also based on the circumstances that the expert testimony offered there was in "direct response to the state's interviewer's opinion" testimony and thus was "evidence directed at the activities of the interviewers." *Biezer*, 947 S.W.2d at 542. It also noted that there was corroborating testimony from the victims "as to the sexual abuse that was committed against each of them personally and which they witnessed against the other two victims[,]" *id.*, and further stated:

> An expert's testimony regarding improper interviewing techniques in a child sex abuse case runs the real risk of commenting on the victim's credibility, which is clearly impermissible under Missouri law. Additionally, such testimony injects a collateral issue into the case and may confuse and muddle the

**6.** In *Sloan*, the defendant sought to admit expert medical testimony for the purpose of analyzing " 'the techniques employed by those individuals responsible for the investigation, since both had been [held] out to the jury as possessing some specialized skills in the child interviewing process.' " 912 S.W.2d at 595. The defendant alleged that " 'the attack was upon the methods employed by the interviewers, those individuals [who] made the determination that sex abuse occurred, not upon the veracity of a young child.' " *Id.* The Eastern District of this Court determined that the defendant's offer of proof showing that the State's witnesses used faulty methods and techniques when speaking with the alleged child victim "would leave the effect of such conduct and credibility decisions within the province of the jury[,] ... [and] would not be a comment on or an expression of any opinion regarding the veracity of" the alleged child victim. *Id.* The State's witnesses interviewed the victims and also testified and substantiated the victims' accounts. Further, it was determined that the crux of the testimony the defendant sought to admit "was intended to show that a substantial portion of the questions asked [by an investigating detective] [was] 'inappropriate' " and would have functioned "to assist the jury directly in evaluating the weight given to the testimony of" the detectives investigating claims of abuse. *Id.* at 597.

mission of the jury. Allowing such testimony may lead to a "battle of experts" and lead the jury away from the main issues in the case.

*Id.* at 542–43. The Eastern District concluded that there was no abuse of the trial court's discretion in denying the offered expert testimony, as "expert testimony was not required given the ages of the victims, their lessened susceptibility to suggestion, and other corroborating witnesses." *Id.* at 543.

 Generally, there are two types of expert testimony challenged in child sexual abuse cases: general profile testimony, which describes behaviors and characteristics commonly observed in victims of sexual abuse; and particularized testimony, which concerns the credibility of the alleged victim. *State v. Tyra*, 153 S.W.3d 341, 348 (Mo.App.2005). "An expert may comment as to the 'behaviors and other characteristics commonly found in those who have been the victims of sexual abuse,' but may not comment directly on 'a specific victim's credibility as to whether they have been abused.'" *Gabaree v. State*, 290 S.W.3d 175, 180 (Mo.App.2009) (quoting *State v. Churchill*, 98 S.W.3d 536, 538–39 (Mo. banc 2003)). "Missouri strictly prohibits expert evidence on witness credibility[,]" as this would invade the province of the jury. *State v. Foster*, 244 S.W.3d 800, 802 (Mo.App.2008). *See also Davis*, 32 S.W.3d at 608–09 (stating that the jury is capable of understanding the reasons why a statement may be unreliable and expert testimony on the issue would invade the jury's proper realm); *State v. Taylor*, 663 S.W.2d 235, 241 (Mo. banc 1984) (stating that expert testimony regarding a witness's reliability in distinguishing truth from fantasy invades the province of the jury to make credibility determinations).

Here, D.A. was almost fourteen and H.A. was sixteen when they disclosed that they had been sexually abused. At the time of trial, they were eighteen and twenty, respectively. The susceptibility of children to improper and suggestive interview techniques was not relevant here. Moreover, none of D.A.'s or H.A.'s interviewers or counselors testified at Defendant's trial. D.A. and H.A. were the only witnesses who testified that sexual abuse occurred, and their testimony corroborated each other's. Dr. Schultz's testimony was not admissible as expert testimony to challenge their credibility. Point II is denied.

### *Decision*

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.