### STATE of Missouri, Respondent,

v.

### Rodney SLOAN, Appellant.

### No. 66753.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 24, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 11, 1995.

Application to Transfer Denied
Jan. 23, 1996.

Bante & Bante, P.C., Sharon M. Bante, Hillboro, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl Caponegro, Assistant Attorney General, Jefferson City, for Respondent.

## PER CURIAM.

Defendant appeals convictions by a jury of one count of sexual abuse in the first degree and two counts of sodomy. He was sentenced in accordance with the jury's assessment to concurrent terms of five years on all three counts.

At trial, mother testified her daughter, A.D., was six years old on February 13, 1993, the date of the alleged sexual abuse. She testified that on Friday, February 12, 1993, she dropped A.D. off at her grandmother's house where A.D. was to spend the weekend. On February 14, 1993, A.D.'s Aunt Anita informed the child's mother by telephone that something was wrong. Mother then spoke with A.D. on the phone. She concluded A.D. had been sexually abused by defendant.[1]

Pam Warren, an employee of the Division of Family Services, testified she received a hot-line call from the mother. Warren had "in-house training" and "previous experience" as an investigator for "the hot line unit to make sure that children were protected." On February 18, 1993, Warren and Detective Timothy Betz of the Jefferson County Sheriff's Department, interviewed A.D. at her grade school. Mother was also at the school. The interview with A.D. was not recorded.

Warren testified A.D. had volunteered defendant's name as the person who had sexually abused her:

[S]he had been at her Aunt Evelyn's house and that her Aunt Evelyn had allowed her to go and get in bed with [defendant], and then her Aunt Evelyn had left the house. She had laid on [defendant's] chest while [defendant] was laying in bed. Then [A.D.] told me that she had been—

---

1. Pursuant to § 491.075, RSMo Supp.1993, hearsay statements of victim were extensively used in this trial. That section provides:

    1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

    (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

    (2)(a) The child testifies at the proceedings; or

    (b) The child is unavailable as a witness; or

    (c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

    Though not part of the record on appeal, the court held hearings in late February and early March and apparently decided that the time, content, and circumstances of the hearsay statements provided sufficient indicia of reliability. No appeal is taken from that decision of the court.

had touched [defendant's] wiener and that [defendant] had placed her on his wiener.

\* \* \* \* \* \*

[A.D.] stated that he'd also placed his finger in her punkie, as she referred to it, and moved it around.

On direct examination, Detective Betz testified he had training and experience in law enforcement. He had "child abuse and other police-related training." He interviewed A.D. a second time on March 9, 1993. A.D.'s mother was present. The interview was recorded using audiotape. A.D. essentially repeated the facts from the previous interview.

A.D.'s testimony at trial was consistent with the statements of mother, Detective Betz and Warren. A.D. testified that on the day of the alleged sexual abuse, while she was sleeping, Aunt Evelyn asked if she wanted to lay down with defendant. A.D. said she did. She was taken by her aunt to defendant's bedroom. Her aunt then left the house. Once A.D. was on the bed, defendant pulled her onto his chest and removed her pants and undergarments. A.D. testified defendant then touched her "punkie" (her vaginal area) with his hand. After moving his hand back and forth across A.D.'s vaginal area, defendant inserted one finger. A.D. also testified defendant put his "private" in her "private" and moved her up and down. Then defendant left the room; A.D. pulled up her underpants and tights and went into the living room and watched television with defendant. Defendant's mother then came to the house with defendant's son. Defendant's son and A.D. played Nintendo.

A.D.'s Aunt Evelyn, defendant's mother, A.D.'s grandmother, Dr. David Stansfield and defendant testified in defense of the charges. Aunt Evelyn testified she picked her niece up at school on Friday, February 12, 1993, which was her usual practice. Approximately, 8:00 a.m. Saturday morning, Aunt Evelyn told A.D. she had to step out for a short time. A.D. wanted to go along, but Aunt Evelyn said no and told her she could lay down with defendant until she returned. Aunt Evelyn returned at approximately 10:00 a.m. A.D. was playing video games with defendant's son.

Defendant's mother testified she dropped defendant's son off with defendant Saturday morning. She telephoned defendant at approximately 9:30 a.m. and arrived at his residence at approximately 9:45. When she entered the house, defendant and A.D. were watching television.

Defendant denied sexually abusing A.D. A.D.'s grandmother testified she examined her genital area on Sunday, February 14, 1993, after A.D. told her it was hurting. Grandmother stated A.D. looked like she had "a urinary tract infection." She noted it was "red, a little swollen, not much, but she'd been rubbing herself a lot." Dr. Stansfield testified he examined A.D. on February 17, 1993, and found no physical signs of sexual abuse.

On appeal, defendant contends the trial court erred in not allowing Dr. Ann Duncan to testify as an expert because the proffered testimony would have been proper evidence of a scientific and specialized nature outside the realm of common experience and knowledge. Defendant argues he sought Dr. Duncan's testimony for the purpose of analyzing:

> . . . the techniques employed by those individuals responsible for the investigation, since both had been held out to the jury as possessing some specialized skills in the child interviewing process. Thus, the attack was upon the methods employed by the interviewers, those individuals that made the determination that sex abuse occurred, not upon the veracity of a young child.

The trial court sustained the state's motion in limine to exclude Dr. Duncan's testimony after it found this evidence would merely have been "a commentary on the veracity of the witness, and this is always within the province of the jury." This finding is not responsive to defendant's offer to prove the state's "expert" witnesses used faulty methods and techniques when speaking with A.D. That evidence would leave the effect of such conduct and credibility decisions within the province of the jury. Also, it would not be a comment on or an expression of any opinion regarding the veracity of A.D.

Expert testimony "should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984), *quoting Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, 586 (Mo. banc 1978). The evidence must aid the jury. *Taylor*, 663 S.W.2d at 239. Admission of scientific evidence depends on wide acceptance in the relevant scientific community of its reliability. *Id.*

Also, it is within the sound discretion of the trial court whether to admit an expert's testimony. *Id.* Although expert testimony should not be admitted if it unnecessarily diverts the attention of the jury from the question to be decided, experts may testify as to their opinion on an ultimate issue in a criminal case. *Id.* However, expert testimony is not admissible as it relates to the credibility of a witness. *Id.*

There are typically two types of expert testimony challenged in child sexual abuse cases: 1) general testimony describing behaviors and other characteristics commonly observed in sexually abused victims ("profile" testimony); and 2) particularized testimony concerning the alleged victim's credibility. *State v. Williams*, 858 S.W.2d 796, 798–99 (Mo.App.E.D.1993). While the trial court has greater discretion in admitting the former, the latter usurps the province of the trier of fact and is inadmissible. *Id.* at 799.

The state argues the offer of proof was for evidence attacking the credibility of A.D. We disagree. The offer was to show the state's expert acted improperly in dealing with A.D. by using techniques and methods that were unreasonably suggestive.

The issue on this claim of error has not been decided in Missouri. However, courts in other jurisdictions have recognized child witnesses are susceptible to suggestive interview techniques. *Idaho v. Wright*, 497 U.S. 805, 812–13, 110 S.Ct. 3139, 3144–45, 111 L.Ed.2d 638 (1990); *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372, 1377 (1994); *People*

*v. Michael M.*, 162 Misc.2d 803, 618 N.Y.S.2d 171, 176–78 (Sup.1994); *State v. Kirschbaum*, 195 Wis.2d 11, 535 N.W.2d 462, 466–67 (App. 1995). Opinions of experts on improper or suggestive techniques employed by individuals investigating allegations of sexual abuse of children have been allowed in several jurisdictions. *Michaels*, 642 A.2d at 1384 ("Experts may thus be called to aid the jury by explaining the coercive or suggestive propensities of the interviewing techniques employed, but not of course, to offer opinions as to the issue of a child-witness's credibility, which remains strictly a matter for the jury"); *People v. Alvarez*, 159 Misc.2d 963, 607 N.Y.S.2d 573, 574 (Sup.1993); *State v. Hulbert*, 481 N.W.2d 329, 333–334 (Iowa 1992) (Some but not all of the testimony was admitted. The excluded portion was excluded at defendant's earlier request); *State v. Floody*, 481 N.W.2d 242, 248–249 (S.D.1992) (Admission of expert testimony on investigative techniques held no error); *State v. Malarney*, 617 So.2d 739, 740 (Fla.App. 4 Dist. 1993) (Reversible error to exclude defendant's expert psychological testimony regarding unreasonably suggestive interviewing techniques used with a child witness); *See also State v. Erickson*, 454 N.W.2d 624, 626 (Minn.App.1990); and *State v. Hadfield*, 788 P.2d 506, 508 (Utah 1990).

Defendant offered to prove the state's two witnesses, Det. Betz and Warren, gave testimony that was not probative of guilt because they used faulty techniques or methods in dealing with the child. The state elicited testimony from both that they functioned on the basis of experience and training in sexual abuse matters. Although it was not necessary, the state elected to clothe them with expertise. Evidence they functioned improperly as experts does not constitute evidence which is within either category of claimed expertise excluded by *State v. Williams* and like cases. First, it represents a direct response to expert opinion offered by the state. Second, it is neither "profile" testimony or particularized testimony concerning the victim's credibility. Rather, it is directed at activities of the witnesses.

In the offer of proof,[2] Dr. Duncan testified that authority or parental figures tend to distort a child's memory.[3] Dr. Duncan stated:

> The [sexual abuse] field is full of mythology,..... One [myth] is that children are not suggestible; and quite to the contrary, they're highly suggestible; the second is that children only speak the truth. And for any of us who've raised children and asked them whether they've brushed their teeth or not, one could argue that they do not always speak the truth.

She also contrasted the typical pattern of an incestuous relationship with an "assault-like"

**2.** The trial court sustained the state's motion in limine which prohibited Dr. Duncan to opine regarding the child's "credibility, truthfulness, veracity or tendency to lie." Upon calling Dr. Duncan as a witness, the state renewed its motion and defendant proceeded with an offer of proof. The offer was for evidence which did not fall within the exclusion because Dr. Duncan did not say she would state any opinion on credibility or veracity of A.D.

**3.** This was in reference to the particular interview procedures conducted on the object of a child abuse charge. In this case, the interviewers "double-teamed" A.D. Detective Betz and Warren interviewed A.D., while mother was allowed to stay in the room. Dr. Duncan concluded that this presented a particularly "inappropriate" atmosphere that would have a tendency to taint the child's answers—a child of 6 or 7 would tend to respond with answers she believes would not "get [her] in trouble."

**4.** Dr. Duncan believed that the alleged relationship between defendant and A.D. was incestuous in nature because defendant "was someone who [had] contact with the child over a chronic course of conduct or chronic course of time." Unlike an incestuous relationship which tends to escalate slowly and progress over time, the incident described in this case was "assault-like." In Dr. Duncan's opinion, the 6,000 cases she had reviewed in the past eight years, the valid accounts usually included a typical progression, whereas the fictitious statements often included fully executed serious sexual acts during the first incident. In her opinion, therefore, such an "assault-like" incident in this situation is "questionable, especially from a seven year old."

**5.** Dr. Duncan stated that approximately 78% of the questions asked of A.D. by Detective Betz were "inappropriate" because they were either "leading", "repeats" or "affirms". She stated that "leading questions" are questions that require the child to answer with a mandatory "yes" or "no" or feed the child with the answer. Such questions are "inappropriate" because they

sexual attack.[4] However, the crux of Dr. Duncan's testimony was intended to show that a substantial portion of the questions asked by Detective Betz to A.D. on March 9, 1993, were "inappropriate."[5] This represents evidence only an expert could give on matters not within the knowledge of a juror. It would assist the jury directly in evaluating the weight given to the testimony of Detective Betz and Warren. Moreover, the testimony of either or both of these witnesses was sufficient to make a submissible case, if believed. Accordingly, we find the error was prejudicial and defendant is entitled to a new trial.

"set up the response and you cannot judge the validity of the response because the question takes away the power of the person to make a spontaneous descriptive response." "Repeats" are questions that take the end of an answer and feed it back to the child in the beginning of the next question, and they are "inappropriate" because they tend to reinforce the child's response. "Affirms" are questions that indicate the child is "on the right track," and they are inappropriate because the child is effectively verbally rewarded for saying what the child believes the interviewer wants to hear.

The following is Dr. Duncan's response to the transcribed interview between Detective Betz and A.D. Defense counsel read the questions asked by Detective Betz of [A.D.], and Dr. Duncan responded:

Q [Defense counsel] All right. Det. Betz says then, "Where did he touch you?"
A [Dr. Duncan] That's a leading question.
Q Why is that a leading question?
A Because it asks for a specific response that the child has no choice but to produce either one thing or another.
Q [A.D.] then says, "Here," and Det. Betz continues pointing to her groin.
A That's what I refer to as a description or a descriptor. Unfortunately it's done within the hearing of the child and again reinforcing.
Q All right. "Did he do—have you touch him?"
A Leading question.
Q [A.D.] replies, "Yeah." Det. Betz: "He had you touch him?"
A Repetitive.
Q "Where did you touch him at?"
A Leading question.
Q "Okay."
A Affirmation.
Q She pointed to her groin.
A Descriptor.
Q "Did he touch you? What did he touch you with?"
A Leading question.
Q "His hand?"

Defendant next argues the trial court erred in prohibiting A.D.'s grandmother from testifying about "[A.D.'s] behavior in the year preceding the alleged offense in that the presumption of irrelevance created by section 491.015 ... was overcome because the probative value of the evidence sought to be elicited far outweighed its prejudicial value, if any, and it was relevant to the issue of alternative sources of [A.D.'s] precocious sexual knowledge not to any prior sexual conduct."

■■■■ Section 491.015, RSMo1994, the Rape Shield Statute, is designed to protect the victim. *State v. Madsen,* 772 S.W.2d 656, 659 (Mo. banc 1989). The statute allows evidence of specific instances of a rape victim's prior sexual conduct only if it falls within one of the exceptions contained in § 491.015.1(1)–(4), and the trial court finds it relevant to a material fact or issue under § 491.015.2. *State v. Danback,* 886 S.W.2d 204, 207 (Mo.App.E.D.1994). Whether evidence is relevant is a matter for the trial court and reviewable only for an abuse of discretion. *State v. Culkin,* 791 S.W.2d 803, 808 (Mo.App.1990).

Prior to trial, the court sustained the prosecutor's motion in limine to exclude evidence pursuant to the Rape Shield Statute of any prior sexual conduct by A.D.[6] During the trial, the court invited defendant to make an offer of proof to rebut the prosecutor's argument. Defendant argued that he was entitled to show an alternative source of knowledge about sexual conduct, and it was not an attempt to tarnish a six year old girl's reputation. Defendant claims that the testimony would provide for the jury "a source of precocious sexual knowledge other than the facts alleged involving the defendant," and the "trier of fact is effectively forced to conclude that the defendant must be guilty, because a child of tender years would not otherwise have such information."

Upon conclusion of defendant's offer, the trial court held the testimony of grandmother concerning the prior sexual conduct of A.D. was neither relevant nor probative.

■■■■ We find no abuse of discretion. Defendant failed to show why the testimony qualifies under the § 491.015.1(1)–(4) exceptions. Further, his argument fails based on following precedent.

This issue was raised in both *State v. Lampley,* 859 S.W.2d 909 (Mo.App.E.D.1993) and *State v. Harvey,* 641 S.W.2d 792, 798 (Mo.App.1982). In those cases, the defendant unsuccessfully attempted to admit previous sexual conduct by the victims, a 9–year–old and a 12–year–old respectively, to show that the victims had prior awareness of sexual matters. *Id.* at 798; *Lampley,* 859 S.W.2d at 910.[7] In *Harvey,* the Western District found the defendant's intent in seeking to introduce evidence of the victim's past sexual experience was to attack her credibility by implying the acts she was now alleging were actually events she had learned about at an earlier time. *Harvey,* 641 S.W.2d at 792. The defendant argued the jury should have been made aware the victim had knowledge of sexual acts and terminology prior to his alleged actions, because it implies a very young girl with unusually extensive sexual knowledge must have gained that knowledge from a sexual encounter. *Id.* The defendant argued where the only sexual encounter before the jury involved the defendant, the jury is left with the assumption his alleged actions were the source of her knowledge. *Id.* The Western District disagreed with defendant's contention, and held the evidence was speculative and attacked the credibility of the child. *Id.* Further, defendant was not deprived of his constitutional rights of confrontation and cross-examination. *Id.*

Likewise, defendant's argument in the present case fails. Moreover, it is significant

---

A Leading question.

**6.** Defendant wanted to have A.D.'s grandmother testify that one night when she opened the door to A.D.'s room she saw A.D. on top of her Aunt Anita simulating *sexual intercourse.* Defendant argues that A.D. then told her grandmother that she saw her mom and another man performing sex.

**7.** In *Lampley,* the trial court disallowed evidence that the victim had allegedly been a prior victim of abuse. *Lampley,* 859 S.W.2d at 910. Defendant sought admission of such evidence to show victim had knowledge of sexual acts. *Id.* We did not directly rule on this issue; however, we stated: "[t]his is a matter on which the trial court has discretion which was probably not abused." *Id.* at 911.

the testimony of A.D. was simple, child-like recollections of unlawful touching which was probative without reference to any prior sexual experience or knowledge of any sexual connotation in the conduct attributed to defendant. Point denied.

Defendant also argues the trial court erred in allowing the state to file a substitute information in lieu of indictment which changed the date of the offense. He contends he was prejudiced because the "date(s) of the alleged offense constituted an essential element of his defense and the amendment made his prepared defenses unavailable and his proposed evidence inapplicable."

The state sought to amend the information by interlineation after the court stated it was "inclined to overrule the State's Sixth Motion in Limine." That motion sought to have the court exclude any evidence that "another person, in particular [A.D.'s Uncle Larry], had an opportunity or motive to commit the crime in question...." A.D. had also, apparently, accused her Uncle Larry of sexually abusing her. The information was amended by changing the allegation as to the period of time the offense occurred from "between January 1, 1993, and February 16, 1993" to "on or about February 13, 1993". After the amendment, the court sustained the state's sixth motion in limine.

Rule 23.08 provides that "[a]ny information may be amended ... at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." An amendment to the date or time of the commission of an offense which is not essential to the crime charged lies within the discretion of the trial court. *State v. Simmons*, 825 S.W.2d 361, 365 (Mo.App. 1992). Time is not of the essence in sex offense cases. *State v. Ellis*, 820 S.W.2d 699, 701 (Mo.App.1991). To determine prejudice under Rule 23.08, a defendant's evidence and his defense must be equally available, after an amendment. *Simmons*, 825 S.W.2d at 365.

Defendant did not show prejudice. Defendant contends he was prejudiced because his "primary defense, e.g.[,] that some-

one other than he committed said offenses, was built around the dates January 1, 1993—February 16, 1993." However, we find it inconceivable that any evidence that was previously applicable or defense that was previously available was rendered inviable where the amended date was within the proper range.

Point denied.

We reverse and remand for a new trial.