STATE of Missouri, Respondent,

v.

Wayne Edward JOHNSTON, Appellant.

No. WD 54207.

Missouri Court of Appeals,
Western District.

Sept. 29, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 24, 1998.

W. Gearg Jaco, Kansas City, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before ELLIS, P.J., and LOWENSTEIN and RIEDERER, JJ.

LOWENSTEIN, Judge.

Johnston was found guilty by a jury of ten counts of sodomy, § 566.060, RSMo 1994, for deviate sexual intercourse committed between September 1993 and July 1994, against three boys.[1] Johnston was sentenced to ten concurrent life terms.

The victims, all under age 14, were Johnston's son, J., from a prior marriage, who was seven when the acts were committed, and his current wife's two sons from a previous marriage, B. and Z. At the time the acts were committed, B. was four years old and Z. was three years old. The first four counts pertained to: Johnston placing his hand on his son J's penis, having J. place his hand on Johnston's penis, having J. place his mouth on Johnston's penis, and Johnston placing his penis in J's anus. The four counts involving B. related to Johnston placing his hand on B's penis, B. placing his hand on Johnston's penis, Johnston placing his mouth on B's penis, and having B. place his mouth on Johnston's penis. The two counts involving Z. related to Z. placing his hand on Johnston's penis and Johnston placing his hand on Z's penis. Johnston, his wife Jill and her two boys moved to Grandview in September 1993. Johnston's son was a frequent visitor. Jill had her own business and was out of the home quite a bit. All of the charged acts occurred while Ms. Johnston was out of the home and while all the boys were present.

1. All further statutory references will be to the Revised Statutes of Missouri, 1994.

Two specific events brought these charges to light. In July 1994, Jill left the Johnston house, along with her two children, B. and Z., and moved to a battered woman's shelter in the metropolitan Kansas City area. A counselor in the shelter advised her that Z., during play therapy, made sexual advances toward a female child. Jill and the two boys moved to Florida. At a dinner party in Florida, around Christmas time of 1994, Jill "... heard a great deal of screaming and commotion and when I got up from my chair and walked into the kitchen [Z] had exposed his penis and was trying to get a little girl to fondle it and suck his penis." After being taken from his perch on the kitchen table, he told his mother, "What's wrong with it, daddy used to do it." Ms. Johnston testified, "He's drawn pictures of rear ends and penises and explained that it hurt really bad, that penises had semen coming out of them, and—um—he described the pee-pee game— this is what he played with the boys, when he did these things to them." She then asked B. who told her the defendant "... would make him suck his penis, and pee in his mouth" while playing the "pee-pee" game. Jill Johnston notified police in Florida who took video statements of B. and Z.

The authorities in Missouri were notified and B. and Z. were then interviewed and video statements taken in this state. Jill Johnston called defendant Johnston's first wife, Cheryl Johnston, with the news. Cheryl asked J., her son, if anyone had given him a bad touch. He said no. After seeing a therapist on another matter Cheryl told the therapist of her conversation with Jill. Sometime later she again asked J. about any bad touchings and he responded "... that his dad had played a game with all the kids called the pee-pee game ..." and if they didn't do it "he would beat them." The boy testified his father told the three boys they would not get to see each other again if they told anyone about the pee-pee game. He told his mother that Johnston had sucked his penis and put his penis in J.'s behind. She reported the matter to the Grandview Police Department. All three boys' trial testimony was consistent with the investigatory interviews and the accounts given to the mothers.

## I.

Johnston's first point asserts prejudicial error in a trial court ruling which limited the questioning of his expert in describing the suggestive nature of the interviewing techniques employed by the Florida authorities during the initial portion of the investigation.

A § 491.075.1 hearing was scheduled to determine the admissibility of the Florida videotaped statements of B. and Z., as well as the subsequent statements taken from all three boys in this state. This section allows the introduction, and the admissibility as substantive evidence of the statement made by a child under twelve in certain sex related offenses, where the "... time, content and circumstances of the statement provide sufficient indicia of reliability...." (This statute is set out in footnote 1 appearing in the next point). At this hearing, Johnston put on an expert, Dr. Wisner, who opined the interviews, particularly the ones taken in Florida, were suggestive and put extraneous information into the youngsters' memory and their narrative. Wisner called this phenomenon "confabulated memory." The trial court allowed the videos to be introduced under the aegis of § 491.075. The prosecutor filed a motion in limine to limit and exclude from the jury, the trial testimony of Dr. Wisner as to his expert opinion on the credibility of any of the child witnesses. The trial court, in reliance on *State v. Ellis*, 710 S.W.2d 378, 388 (Mo.App. banc 1986), ruled that expert opinion testimony as to the credibility of witnesses, would not be admissible. While acknowledging the trial judge, under *State v. Biezer*, 947 S.W.2d 540, 541 (Mo.App.1997), has discretion in admitting or excluding expert testimony, Johnston contends the ruling here which limited Wisner from telling the jury about "confabulated memory," "or about how once an idea is injected into a child's memory it becomes permanent," was prejudicial to his case. *State v. Sloan*, 912 S.W.2d 592 (Mo.App.1995). *Sloan* repeats the case law that there are typically two types of expert testimony challenged in child sexual abuse cases: general testimony describing behaviors commonly exhibited by victims (profile testimony), and particularized testimony concerning the alleged victim's credi-

bility. The Eastern District in *Sloan* wrote that the trial court has discretion in admitting the former, but admitting the latter as to credibility, usurps the province of the jury. 912 S.W.2d at 596.

■ A reading of the transcript undercuts the assertion made in this point. Defense counsel's direct examination does not reveal any prejudicial inhibition of the questions to Dr. Wisner on the suggestibility of the circumstances surrounding the taking of the statements. He was inhibited only on questions pertaining to the expert's opinion on the boys' credibility. Despite the in limine ruling, it is apparent the trial court allowed the defense to delve into the interview techniques, so *Sloan* does not save the day for Johnston. In any event, the interlocutory ruling was not tested at trial, so the point is not preserved and must be denied. *State v. Goad*, 926 S.W.2d 152, 155 (Mo.App.1996).

## II.

■ The second point relates to the victims' statements given in interviews conducted during the investigation of this case. As previously stated in the first point, § 491.075.1(2) allows, after a hearing and finding of reliability by the trial court, the statements to be introduced as substantive evidence even though the child takes the stand.[2] In the case at bar, the trial court held a § 491.075 hearing and determined the

statements passed muster under the statute, and were admitted at trial. As stated before, all three boys testified. In essence, this point asserts the trial court erred in its determination of a showing of sufficient indicia of reliability by allowing the statements into evidence.

The trial court saw the Florida and Missouri statements, and heard evidence and arguments on both sides before making its determination. Both mothers and two detectives testified on behalf of the state. Dr. Wisner's position that the interviews were irretrievably contaminated was made abundantly clear to the court. Wisner opined that the suggestive interview techniques led the young victims to be able to be so precise and direct in their statements regarding events and dates.

The trial court's § 491.075 determination was not mandated by the Wisner opinion. Johnston gives no hint as to which questions in the statements lead to a conclusion which would have excluded the statements from the jury. He has cited no cases where an appellate court has determined similar scenarios to have been unduly suggestive and led to unreliable results. [Johnston's complaints concerning the interviewer's suggesting answers are undermined by the fact that the statements to the police, including reference to "the pee-pee game," were totally consistent with the accounts first given to the

---

2. § 491.075 Statement of child under twelve admissible, when

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

2. Notwithstanding subsection 1 of this section or any provision of law or rule of evidence requiring corroboration of statements, admissions or confessions of the defendant, and notwithstanding any prohibition of hearsay evidence, a statement by a child when under the age of twelve who is alleged to be victim of an offense under chapter 565, 566 or 568, RSMo, is sufficient corroboration of a statement, admission or confession regardless of whether or not the child is available to testify regarding the offense.

3. A statement may not be admitted under this section unless the prosecuting attorney makes known to the accused or his counsel his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the accused or his counsel with a fair opportunity to prepare to meet the statement.

4. Nothing in this section shall be construed to limit the admissibility of statements, admissions or confessions otherwise admissible by law.

children's mothers.] The trial judge did not commit an abuse of discretion by admitting the statements in evidence. *State v. Brown,* 953 S.W.2d 133, 139—40 (Mo.App.1997). This point is denied.

### III.

■ Section 491.060(2) reads in relevant part:

The following persons shall be incompetent to testify:

(2) A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly; provided, however, that except as provided in subdivision (1) of this section, a child under the age of ten who is alleged to be a victim of an offense under chapter 565, 566 or 568, RSMo, shall be considered a competent witness and shall be allowed to testify without qualification in any judicial proceeding involving such alleged offense. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony.

Z. was six years old when he testified. Johnston asserts that despite the statutory language, the trial judge should have sustained his motion to declare Z. incompetent to testify because the boy could not remember such things as the location of his school. Section 491.060 was first ruled constitutional in *State v. Williams,* 729 S.W.2d 197 (Mo. banc 1987). Under the clear wording of the statute, Z., an alleged victim to a crime under chapter 566, was a competent witness and was allowed to testify without qualification. *State v. Silvey,* 894 S.W.2d 662, 669 (Mo. banc 1995).

### IV.

■ In his final point, Johnston contests the sufficiency of the evidence on the two counts committed against Z. Count IX pertained to having Z. place his hand on Johnston's penis. Count X charged Johnston with placing his hand on Z's penis. He says the boy could provide no testimony about either incident, and the trial court erred in failing to grant a judgment of acquittal on these two counts. Review of the sufficiency of the evidence is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the accused guilty beyond a reasonable doubt. *State v. Silvey,* 894 S.W.2d at 673.

Z., who was three years old when the alleged acts were committed, testified on direct that Johnston touched him on his "private." This evidence was sufficient to make a case on count X. When asked by the prosecutor whether he ever had to touch the defendant on his private part, he replied "no." However, Johnston's son, J., in his videotaped statement and his statement to police, which were statements that were admitted as substantive evidence under § 491.075, described as part of Johnston's pee-pee game activities that all three boys would, with their hands, "have to touch and rub his private parts ... and at times it was very hard, and they'd have to squeeze." Under the scope of review, there was sufficient evidence to support the jury verdicts on counts IX and X.

The judgments are in all respects affirmed.

All Concur.