STATE of Missouri, Plaintiff–
Respondent,

v.

Paul J. COTE, Defendant–Appellant.

No. 24084.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 29, 2001.

Rosalynn Koch, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

A jury convicted Paul J. Cote ("Defendant") of first-degree statutory sodomy, § 566.062.[1] His appeal from the resulting judgment of conviction and sentence charges the trial court committed reversible error in evidentiary rulings and in its pronouncement of sentence. Specifically, Defendant maintains the court erred when it: (1) allowed the jury to see a videotaped statement of the victim; (2) rejected Defendant's effort to elicit testimony from DFS workers Cathlene Wanner ("Wanner") and Carol Halbmeier ("Halbmeier") concerning their counselling of the victim; and (3) entered a judgment that recited Defendant was convicted of "sodomy" rather than "statutory sodomy." We affirm in part; we reverse and remand in part.

## FACTS

The victim ("K.C.") is Defendant's daughter who was eight years old at the time of the crime. K.C. testified to facts, which if believed by a trier of fact, established Defendant sodomized her in late October and early November of 1998 while she was living with Defendant in Branson, Missouri. Background facts which led to Defendant being charged and convicted, include the following recitation.

On November 11, 1998, K.C. was placed in a foster home where she remained until June of 1999. In January of 1999, K.C.

---

1. All statutory references are to RSMo 2000 unless stated differently.

told her foster mother that Defendant had sexually abused her and she "didn't want to live with it anymore." On January 25, 1999, the foster mother contacted the Division of Family Services ("DFS"), who in turn referred her to the Child Advocacy Center where DFS worker Angela Bryant ("Bryant") did a videotaped interview of K.C. at the Center.

During the interview, K.C. recounted instances when Defendant directed that K.C. should take her clothes and he would then have off her put her mouth on "his private part." According to K.C., these instances usually occurred when her step-mother was at work, her infant sister was asleep, and Defendant was watching television. During the interview, Bryant produced anatomically correct dolls which K.C. then used to demonstrate how she performed oral sex on Defendant. While using the dolls, K.C. told Bryant that she sucked on Defendant's private part as he directed, that Defendant would grab her hair and move her head up and down, that "white stuff" came out and into her mouth, and she was made to swallow it. Following this interview, Defendant was charged with first-degree statutory sodomy.

When the State offered the videotaped interview of K.C. at trial, Defendant objected on the basis that its admission would violate his right to confront and cross-examine witnesses. The objection was overruled and the videotape was shown to the jury. The State also presented K.C. as a live witness, and her testimony at trial closely tracked what she told Bryant in the initial interview.

In his trial testimony, Defendant denied touching K.C. in a sexual way. He said he gave up custody of K.C. on November 11, 1998, because he could not help her in light of her behavior. Also, Defendant's wife testified, claiming, *inter alia*, she had never seen Defendant sexually touch K.C.; she and Defendant had oral sex in the living room occasionally after K.C. was in bed; from October 20 through November 1, 1998, she was a "stay-at-home mom" and therefore, was in the home each day when K.C. arrived from school. Defendant's wife also testified that Halbmeier visited the home nearly every day, during the relevant period and arrived before K.C. got home from school.

Defendant was convicted and sentenced, and this appeal followed. Additional facts are given when required to analyze Defendant's points relied on.

## DISCUSSION AND ANALYSIS

*Point I: Alleged Error in Admission of VideoTaped Interview*

■ Defendant's first point claims reversible error resulted when the trial court admitted K.C.'s "hearsay statements to Angela Bryant, and allowed the state to show the jury [K.C.'s] videotaped statement." Although Defendant begins his argument by broadly asserting that admission of the videotaped interview of K.C. violated his constitutionally guaranteed rights to confrontation, due process, and a fundamentally fair trial, he quickly acknowledges in his brief that § 492.304 authorizes the admission of such a statement.[2]

He argues, however, that the guarantees of trustworthiness which must exist as a precursor to admission are not found here. In that regard, § 492.304.1(4) provides that a videotaped interview of a child under the age of 12 is admissible only if the

2. Without expressly saying so, Defendant via his argument implicitly recognizes that § 492.304 has withstood due process and confrontation challenges to its constitutionality. *See State v. Schaal,* 806 S.W.2d 659, 662–64 (Mo.banc 1991).

"statement was not made in response to questioning calculated to lead the child to make a particular statement or to act in a particular way." Defendant points out that although an interviewer may direct the areas of inquiry, *State v. Russell*, 872 S.W.2d 866, 873 (Mo.App.1994), this statute "precludes leading questions which essentially put words in the child's mouth." *State v. Moesch*, 738 S.W.2d 585, 587 (Mo. App.1987). Continuing, Defendant argues:

> "The manner of Ms. Bryant's inquiry had the unfortunate effect of forcing [K.C.] to speak in such a manner that she believed would please Ms. Bryant. [K.C.] stated that she did not want to discuss the allegations, but instead of guiding the inquiry in a non-suggestive manner, *Ms. Bryant told her in effect that [K.C.] could tell her what she wanted to hear or talk to the police.* [K.C.], a young girl with numerous behavioral problems, naturally chose the former. It is no wonder, then, by the time that Detective Lawrence interviewed [K.C.], that [K.C.] was telling her that *'the adults' were telling her that she had been sexually abused.*
>
> "[K.C.'s] hearsay statements had no indicia of reliability that rendered her particularly worthy of belief. The totality of the circumstances illustrates that her statements were elicited by *an interviewer who used the threat of the police to create a threatening environment and coerce a statement.* [K.C.] learned quickly to give the answer that would let her avoid this...." (Emphasis supplied) (citations to transcript omitted).

Defendant's argument fails because its premise is wrong, that is, the argument mischaracterizes and misstates what the record shows. Bryant's remarks to K.C. about which Defendant now complains are, in pertinent part, as follows:

> "A lot of times when kids come here and I talk with them and then I talk to police if they have anything that the police need to know about it, so its important that if you can talk about it that you tell me all the things that you know and then I will tell the police about that, okay? So if there's other things that have happened that you think the police need to know about, then this is a good time to tell me about that, okay. 'Cause a lot of times when police officers have to decide whether or not to put somebody in jail, they have to know a lot of things. And so that's kind of why it's my job to find out those answers, okay? And if we talk here today, then hopefully you won't have to talk to any police officers or anything else later about what's happened, okay?"

Standing alone, without considering the context in which Bryant spoke these words, they cannot be interpreted as affecting K.C. in the manner that Defendant suggests. To the contrary, any reasonable reading of Bryant's remarks can only lead to the conclusion that Bryant was simply explaining (1) what Bryant's role was in the investigation, (2) why K.C. needed to give full information during the interview, and (3) how full disclosure would help authorities take care of the situation.

The correctness of this view and the fallacy of Defendant's argument are confirmed when Bryant's remarks are read in context. Specifically, in a non-coercive, non-leading prelude to the above remarks, Bryant learned the following from K.C.: (1) K.C. understood a "good touch" to mean "hugs and tickling" and a "bad touch" meant someone touching her private part, bottom or butt as her dad had done; (2) Defendant's "bad touching" of K.C. occurred in the living room of their apartment while K.C.'s step-mother was at work and her sister was asleep; (3) Defen-

dant's "bad touches" to K.C. included his touching her "private part" with his mouth and hand; (4) Defendant had touched the inside of K.C.'s "private part" and when he did so, "it hurt[;]" and (5) Defendant told K.C. she was not to tell anyone about the touching. Thereon, Bryant asked K.C. if she had ever given Defendant a "bad touch." K.C. answered affirmatively but when Bryant asked, "[w]hat happened[,]" K.C. answered, "I don't want to talk about it." Bryant then asked K.C. if she thought her sister would be safe, to which K.C. answered, "Yes." It was at that point in the interview that Bryant made the remarks first quoted above which Defendant characterizes as coercive and suggestive. Bryant next spoke to K.C. as follows:

> "I wonder if we could use these dolls again [']cause I need to find out what happened when you had to give your dad a bad touch. And I know you said you didn't want to talk about it. Do you think you could use those dolls to show me what happened when you had to give a bad touch?"

Without hesitation or perceivable reluctance, K.C. answered in the affirmative and began to demonstrate with the dolls how she had touched Defendant's genital area with her mouth. After using the dolls in this fashion, K.C. explained in graphic detail the acts of sodomy described earlier in this opinion.

Contrary to what Defendant argues, there is nothing in the videotape or elsewhere in the record to support his claim that K.C. was coerced into making her statement to Bryant, or that the videotape was a product of suggestions by others that she had been sexually abused, or that K.C.'s statement was made in response to questioning calculated to lead her into a particular statement or act in a particular way. The videotape met the criteria of § 492.304 for admissibility; consequently, the trial court did not err in allowing the jury to see and hear the tape. Point I is denied.

*Point II: Alleged Error in Admission of Testimony*

For his second point on appeal, Defendant alleges the trial court "plainly erred" when it sustained the state's objection to certain testimony of two witness, Wanner and Halbmeier, offered by Defendant.[3] Defendant provides different justifications for the admission of each witness' testimony; therefore, we address the testimony of each separately.

■ After the state rested its case in chief, Defendant sought to call Wanner and made a subsequent offer of proof as to her testimony. Fairly summarized, the Defendant's offer of proof via witness Wanner was that Wanner interviewed K.C. in April 1998 concerning alleged sexual abuse of K.C. by a boyfriend of K.C.'s mother. The allegation was that K.C. was touched in the vaginal area by the boyfriend during November 1995. After eliciting this testimony, defense counsel made the following argument to the trial judge:

> "Your Honor, the offer of proof *is relevant to the issue of where she obtained sexual knowledge,* both from her conversations with [DFS], where she acquired her terminology, which would be what a private area is, which is referred in the same way. And I think it's particularly relevant, in light of the fact that the touchings that are—have been stated—in the video and so on are similar to this, and that is a touching to the vaginal area." (Emphasis supplied.)

**3.** Defendant acknowledges that this point is only reviewable upon plain error because the alleged error was not raised in his motion for new trial. *See* Rule 29.11(d). Plain errors may be reviewed at the court's discretion if a manifest injustice or a miscarriage of justice has resulted therefrom. Rule 30.20.

Any reasonable reading of Wanner's offer-of-proof testimony and Defendant's assertion to the trial judge of why it was admissible reveals that such testimony was rendered inadmissible by Missouri's Rape Shield Statute, § 491.015.[4] This follows because, in essence, Defendant was arguing that Wanner's testimony was admissible to show K.C. had been involved in "prior sexual conduct." With exceptions that are not relevant here, § 491.015 renders evidence of a victim's prior sexual conduct inadmissible. *See* n. 4. The State timely objected to the offer of proof on the basis that Wanner's testimony was an "inappropriate" attempt "to show prior sexual activity of . . . an eight-year-old child[.]" The objection, which appeared to be grounded in § 491.015, was sustained by the court. The correctness of the ruling is fully supported by *State v. Sloan*, 912 S.W.2d 592 (Mo.App.1995). An extended discussion is not necessary as the interpretation and application of § 491.015 made in *Sloan* dispelled the argument Defendant made to the trial court for the admissibility of Wanner's testimony. We find no manifest injustice or miscarriage of justice in excluding the offer-of-proof testimony of Wanner.

■ In reaching this conclusion, we do not ignore Defendant's claim in which he mischaracterizes the argument he made to the trial court for admitting Wanner's

testimony. Specifically he now says, "[t]he defense offered [Wanner]'s testimony for the express purpose of showing that [K.C.] had information upon which she could have acted had she been abused. Her failure to do what she had been told was relevant to the charges against [Defendant]." From this, we discern that Defendant is belatedly trying to avail himself of § 491.015.2 by claiming that the evidence proffered via Wanner was relevant under that section. This is not, however, the argument Defendant made to the trial judge for admissibility of Wanner's testimony. A defendant cannot, on appeal, broaden the stated purpose of an offer of proof made at trial. *State v. Woodland*, 768 S.W.2d 617, 618 (Mo.App.1989).

■ In the second part of Point II, Defendant argues the trial court "plainly erred" in disallowing certain cross-examination testimony of Halbmeier concerning conversations with K.C. Defendant insists that K.C.'s statements to Halbmeier were relevant to his claim that K.C. was a troubled child and not a credible witness. Summarized, the evidence that Defendant proffered via Halbmeier but which the court rejected was that (1) Halbmeier and K.C. spoke in late October or early November regarding "good touches" and "bad touches;" (2) K.C. revealed someone she would not like to touch her; and (3) K.C. knew it was appropriate to tell cer-

---

**4.** In pertinent part, § 491.015 provides:

"1. In prosecutions under Chapter 566 . . . opinion and reputation of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

"(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense . . .; or

"(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease; [or]

"(3) Evidence of immediate surrounding circumstances of the alleged crime; or

"(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved. . . .

"2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue."

tain people if she were touched "bad." Defendant claims such evidence would have tended to prove K.C. knew how to respond and had the opportunity to do so; and her failure demonstrated a lack of credibility.[5] From this, Defendant argues the court committed reversible error in excluding the evidence he elicited from Halbmeier on cross-examination. We disagree.

■ Essentially all of the evidence proffered via Defendant's cross-examination of Halbmeier was already in evidence. A court does not abuse its discretion when limiting the admission of cumulative evidence. *State v. Nicklasson,* 967 S.W.2d 596, 619[74] (Mo.banc 1998). For instance, K.C. had already testified that during the period Defendant was molesting her, she knew the difference between a good touch and a bad touch. This was confirmed by Defendant's wife who testified K.C. owned a book which explained "[w]here to touch and not where to touch." K.C. told the jury she never revealed to DFS workers, teachers, or friends that Defendant was sexually abusing her. As K.C. explained it, Defendant told her not to tell anyone. All of this is evidence from which a jury could reasonably have inferred K.C. knew she should tell someone about the abuse if it was occurring.

Although Halbmeier's offer of proof included evidence that K.C. told Halbmeier about being abused by mother's boyfriend while she lived in North Carolina, similar testimony was already before the jury via Bryant. She testified K.C. told her "someone else" had given her a bad touch. Evidence also existed that K.C. had ample opportunity to tell others that Defendant was abusing her. For instance, Defendant testified K.C. talked to investigators alone. Moreover, Kelli Hilburn, a DFS investigator, testified that K.C. had a chance to tell her (outside of Defendant's presence) that Defendant was abusing her, but K.C. did not do so.

In summary, the only evidence via the Halbmeier offer of proof not already in evidence from other sources was that Halbmeier asked K.C. to write down who she could tell about sexual abuse and in response, K.C. wrote "her dad, Pam [Defendant's wife]," and certain teachers. Since the jury had already received "the gist of the testimony" proffered via Halbmeier, the trial court's exclusion of such evidence, even if error, was not prejudicial. *State v. Gilmore,* 681 S.W.2d 934, 940[9] (Mo.banc 1984).

We also note that Defendant's proposed cross-examination of Halbmeier came after she was called as a rebuttal witness for the state and was wholly unrelated to issues addressed by her direct examination testimony. Although Defendant has the right to cross-examine witnesses, this right is not unfettered. *State v. Dunn,* 817 S.W.2d 241, 244[8] (Mo.banc 1991). On this record, we find no manifest injustice or miscarriage of justice resulted from the exclusion of the subject testimony. Point II is denied.

*Point III: Alleged Error in Judgment*

■ Defendant's third point maintains that the trial court erred "in entering judgment of guilt of sodomy after the jury found [Defendant] guilty of statutory sodomy[.]" The State concedes the judgment is technically incorrect and does not object to Defendant's request for correction.

---

**5.** In making this argument, Defendant also claims—incorrectly—that Halbmeier's offer of proof included testimony by her that K.C. had said Defendant "gave her good touches." This is simply not so; the record does not reveal any such testimony. Halbmeier testified K.C. stated she would like for Defendant and his wife to give her good touches such as a hug. Halbmeier never intimated K.C. "stated [Defendant] was the source of 'good touches.'"

The State is correct, however, when it points out that the information charged Defendant with first-degree sodomy, the jury found him guilty of the statutory sodomy charge, and the docket sheet recited that the court entered judgment and sentence for the charge of "statutory sodomy in the first degree[;]" consequently, Defendant was properly convicted despite the mistake in the judgment.

As happened in *State v. Cobbins,* 21 S.W.3d 876[1] (Mo.App.2000), the trial court here simply made a mistake in entering the judgment. *Id.* at 877–78 n. 2. For the sake of clarity, the trial court is directed to correct the judgment to show Defendant was convicted of first-degree statutory sodomy in violation of § 566.062.

The judgment of conviction and sentence is affirmed; to the extent the judgment mistakenly recites that Defendant · was convicted of "sodomy," it is reversed and remanded for further proceedings consistent with this opinion.

MONTGOMERY and BARNEY, JJ., concur.